[No. B060539. Second Dist., Div. Five. Mar. 8, 1994.]

CATHY CARR, Plaintiff and Respondent, v.
BARNABEY'S HOTEL CORPORATION et al., Defendants and
Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3 and 4.

**COUNSEL**

Julian A. Pollok, Selman, Breitman & Burgess and Craig R. Breitman for Defendants and Appellants.

Patricia Herzog, Drosman & Anapoell and C. Thomas Drosman for Plaintiff and Respondent.

**OPINION**

**ARMSTRONG, J.**—Respondent Cathy Carr sued Barnabey's Hotel Corporation (Barnabey's) and Ken Whitty. The case was submitted to the jury on causes of action for sex and pregnancy discrimination based on violation of the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.), wrongful termination in violation of public policy, fraud, and, as to Barnabey's, negligence in retaining and supervising Ken Whitty. The jury returned a

verdict against both defendants in the amount of $75,817, and answered in the affirmative the question "Has the jury found for plaintiff on the theory of violation of the Fair Employment and Housing Act?" The jury also found that Carr was entitled to punitive damages, and after a trial on that issue awarded $75,000 against Barnabey's and $1,000 against Whitty. The court awarded Carr $63,237.10 in fees and costs.

After the verdicts the court granted Carr's motion to amend the judgment to add Peppercorn Ltd. No. 9 (Peppercorn), a California limited partnership, as a defendant.

Barnabey's, Whitty, and Peppercorn appeal, contending that there is insufficient evidence to support the judgment, that the trial court erred in granting the motion to amend the verdict, that the punitive damage award must be reversed, and that the award of attorney fees must be reduced.

### 1. Sufficiency of the evidence

On a claim of insufficient evidence, "all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict . . . . [T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

Appellants argue that the evidence is insufficient to show sexual harassment, fraud, negligent supervision, or wrongful termination. ▋ We will affirm if a single cause of action is supported by the evidence. " 'Where several counts or issues are tried, a general verdict will not be disturbed by an appellate court if a single one of such counts is supported by substantial evidence . . . . This rule assumes that the jury found on the cause of action or theory which was supported by substantial evidence.' " (*McCloud* v. *Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 935-936 [97 Cal.Rptr. 910]; *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359 [317 P.2d 601].)

▋ We find that Carr presented sufficient evidence of unlawful employment practice under the Fair Employment and Housing Act to support the verdict. That act provides that it is an unlawful employment practice for an employer to discharge a person from employment because of the person's medical disability, medical condition, or sex (Gov. Code, § 12940), or to discharge a female employee because of her pregnancy (Gov. Code, § 12945).

■ Federal precedent applies to the act, which is analogous to the federal Civil Rights Act, 42 United States Code section 2000e et seq. (*University of Southern California* v. *Superior Court* (1990) 222 Cal.App.3d 1028, 1035 [272 Cal.Rptr. 264]; *Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467, 475-476 [4 Cal.Rptr.2d 522].) In *Texas Department of Community Affairs* v. *Burdine* (1980) 450 U.S. 248 [67 L.Ed.2d 207, 101 S.Ct. 1089], cited by both parties, the United States Supreme Court set forth the burden of proof on an allegation of discriminatory treatment under the federal Civil Rights Act. "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [Citation.] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (*Id.* at pp. 252-253 [67 L.Ed.2d at p. 215].)

■ Viewing the evidence in the light most favorable to the judgment, Carr's evidence of discrimination was as follows: Carr was hired by Barnabey's in November of 1987. Her interview was conducted by Theodore Post and either Timothy Post, general manager of Barnabey's Hotel, or Stephen Post, controller of the hotel. Pete Post, described by witnesses as the owner of the hotel, was also involved in the hiring.

Carr was hired as banquet manager, but within a matter of weeks her duties were expanded to those of senior food and beverage supervisor and assistant to the food and beverage director, Fernando Cuevas. Cuevas testified favorably about Carr's job performance. While Cuevas was Carr's supervisor he gave her a good evaluation and a raise.

In December of 1988 Cuevas retired and Carr took over most of his duties. Timothy Post, who was Carr's supervisor, told Carr that she was doing a good job. Three or four weeks before she was fired, he gave her a raise. Before December of 1988, both Pete and Timothy Post told Carr, who was pregnant, that day care would be available at the hotel, and that she would be given hotel housing as soon as housing was vacant.

At the end of January, when Carr was seven months pregnant, Barnabey's hired Ken Whitty as food and beverage director. He became Carr's supervisor. On Whitty's third day of employment, while Carr was walking through the hotel kitchen, Whitty told Carr that "this was no place for a pregnant woman to be." Whitty also told other employees that pregnant women

should not be working in the hotel or restaurant business, and that "it didn't look good" to have a pregnant woman at the front desk, where Carr worked, and made derogatory comments about women being strong-willed and outspoken.

Whitty told Carr that the employees were stupid and lazy due to Carr's incompetence, made derogatory comments to other employees about Carr's managerial abilities, and interfered with Carr's work in a number of ways. In one incident, Whitty removed from the premises certain keys, so that it was impossible for her to chill sufficient champagne for a Valentine's Day dinner. Whitty told Carr that he had removed the keys to see if she and the bar manager "had their acts together," and to see how they would respond.

Whitty also publicly blamed Carr for failing to comply with a directive from Mary Kay Post, described by a witness as the owner's mother, regarding placement of salads at a Lion's Club lunch, although he knew that the fault was his, and not hers. The day before she was fired, Carr wrote Whitty a memo about the incident. On the day she was fired, Whitty called Carr to his office, shook the memo in her face, and told her that "no woman talks to me this way" and that for that reason he was firing her.

In her regular weekly meetings with Timothy Post, Carr told him of her concerns about Whitty, and repeated some of the things Whitty had been saying about her, including Whitty's statements about her pregnancy.

These facts are sufficient for a jury finding of discrimination. Appellants argue that Timothy Post testified that he made the decision to fire Carr, after consultation with his brother Stephen Post, Whitty, and a management consultant then working in the hotel, and that the decision was based on Carr's inability to get along with Whitty, and not on the basis of her sex or her pregnancy. Appellants also argue the evidence that other pregnant employees were not fired and that Whitty treated male employees and nonpregnant women in the same way he treated Carr.

These arguments amount to no more than a contention that there is a dispute in the evidence. Moreover, although there was evidence that other pregnant employees, some of whom were related to the Post family, were not fired, the evidence does not indicate whether those employees worked for Whitty. And, although the evidence regarding the Valentine's Day incident indicated that Whitty treated a male employee as he treated Carr, the male employee was not fired. Appellants had the opportunity to prove that Carr was fired for a legitimate, nondiscriminatory reason. The jury rejected the theory that those reasons were the true reasons. They were entitled to do so.

## 2. *The motion to amend the judgment*

Carr's complaint named as defendants Ken Whitty and Barnabey's. Barnabey's answered the complaint, raising several affirmative defenses. Later, Barnabey's took discovery, obtained summary adjudication on an issue, and defended the case at trial. Then, at the trial on punitive damages, Stephen Post, who testified that he was employed by Peppercorn as controller of Barnabey's Hotel, testified on examination by the lawyer representing Barnabey's that Barnabey's had stopped doing business in 1983, had no assets and no source of income, and had never held title to the hotel.

After trial, Carr brought a motion to amend the complaint, or, alternatively, the judgment, to add Peppercorn and Pete Post as defendants. Post's testimony and documents filed with the motion revealed that Barnabey's came into existence in 1980, as a change of name from Pete Post & Co. Henry C. Post was president of Pete Post & Co. and of the renamed corporation. In 1983, Henry C. Post, Mary K. Post, and three others were the officers of Barnabey's. Peppercorn, a limited partnership, was formed in 1974, with Henry C. Post as general partner. Stephen, Timothy, and Theodore Post were added as general partners in 1989. Peppercorn owned Barnabey's Hotel, and after January 1989 also operated it. Peppercorn had been doing business as Barnabey's Hotel and Restaurant, Barnabey's Hotel, and Barnabey's since 1974.

The court denied Carr's motion as to Post, but ordered Peppercorn added to the judgment as a defendant. The court ruled that "the lawsuit was tried on the merits treating Barnabey's as plaintiff's de-jure employer when in fact legally it was only de-facto employer. Peppercorn was Barnabey's principal in the situation involving plaintiff and for all intents and purposes participated fully in the trial on the merits."

Appellants contend that the ruling was erroneous. We disagree. Under Code of Civil Procedure section 187, the court had the authority to amend the judgment to add a judgment debtor. (*NEC Electronics Inc.* v. *Hurt* (1989) 208 Cal.App.3d 772, 778 [256 Cal.Rptr. 441].) Carr's error essentially amounted to no more than a variance between pleading and proof. The decision to grant an amendment in such circumstances lies in the sound discretion of the trial court. "The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done." (*Carman* v. *Athearn* (1947) 77 Cal.App.2d 585, 594 [175 P.2d 926]; Code Civ. Proc., § 469.) Justice was obviously served by the amendment.

It is not too much to say that Peppercorn's conduct approached a fraud on the court. Carr sued the right party under the wrong name, a fact which must

have been clear to the defense from the inception of the litigation. Yet, nothing was said about the mistake in any deposition, motion, or other proceeding. Barnabey's never sought to exonerate itself on the basis that it was not Carr's employer. Moreover, the defense opposed Carr's pretrial motion to file an amended complaint which included an alter ego allegation, and at best sat by silently when, at the pretrial conference, the court dismissed the Doe defendants. This conduct was not rewarded in the trial court and will not be rewarded on appeal.

It is also apparent that Barnabey's and Peppercorn are not as separate and distinct as appellants would have it. Throughout the trial, the parties referred to the hotel, and Carr's employer, as "Barnabey's," or "Barnabey's Hotel." Timothy Post, the Peppercorn general partner who made the decision to fire Carr, testified as general manager of Barnabey's Hotel. Stephen Post, another Peppercorn general partner, testified that "the hotel" had gross receipts of $4.8 to $5 million a year. When questioned about houses owned by the hotel, he testified that "We have had them for several years," and when asked "Who owns these houses?" answered "The hotel does, Peppercorn." He testified about the history and assets of Barnabey's from his personal knowledge. Pete Post, Stephen and Timothy's father, was referred to throughout the trial as the "owner of the hotel," and Mary Kay Post, another Barnabey's officer, was referred to as "the owner's mother." Timothy, Stephen, Pete, and Mary Kay Post were involved in Carr's employment.

The same lawyer represented Barnabey's and Peppercorn. Although the record does not tell us who paid for the defense, we know that Barnabey's, in whose name the defense was conducted, had no assets. Notably, the defense which was most obviously available to Barnabey's, that it was a stranger to the action, was never raised. Instead, the case was fully defended, on the merits, based on the defenses available to the entity which employed Carr and Whitty and owned and operated the hotel. There was no injustice, but rather manifest equity, in the court's ruling.

Appellant contends that there is insufficient evidence that Peppercorn was an alter ego of Barnabey's. Based on the record, we must agree. (See, e.g., *United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 343 [282 Cal.Rptr. 368], regarding the evidence to which courts look to determine alter ego.) However, we find the equitable principles regarding alter ego instructive. ■ Amendment of a judgment to add an alter ego "is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. [Citations.] 'Such a procedure is an appropriate and complete method by which to bind new . . . defendants where it can be

demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.' [Citation.]" (*NEC Electronics Inc.* v. *Hurt, supra,* 208 Cal.App.3d at p. 778.)

We find compelling Carr's argument that this case is similar to *Mayberry* v. *Coca Cola Bottling Co.* (1966) 244 Cal.App.2d 350 [53 Cal.Rptr. 317] and *Cuadros* v. *Superior Court* (1992) 6 Cal.App.4th 671 [8 Cal.Rptr.2d 18]. In *Mayberry,* the plaintiff originally sued the Coca Cola Bottling Company of Sacramento, a partnership, but learned during trial that the correct defendant was a corporation called the Coca Cola Bottling Company of Sacramento, Ltd. The two entities had a business relationship (the corporation supplied syrup to the partnership) and were housed on the same premises. The three persons composing the partnership were officers or directors of the corporation and the general manager of the corporation was assistant general manager of the partnership. (244 Cal.App.2d at p. 351.) The trial court ruling allowing an amendment to the complaint was upheld on appeal, since the circumstances of the case, including the substantial identity of the persons involved in the two firms, showed excusable mistake on the part of the plaintiff and awareness on the part of the true tortfeasor. (*Id.* at p. 354.)

In *Cuadros* v. *Superior Court, supra,* 6 Cal.App.4th at p. 671, the plaintiff named Budget Rent-A-Car Inc. and Budget Santa Monica as defendants in a car accident case. During three years of litigation, the defendants did not reveal that the owner of the vehicle involved in the accident was Budget Westwood, although all the Budget entities were interrelated. Then, at a binding arbitration, the named defendants submitted proof that they were not the owners of the car. The arbitrator entered judgment in defendants' favor.

The superior court granted a motion to vacate the arbitration, but denied the motion to amend the complaint to name Budget Westwood, on the grounds that the statute of limitations had run. The appellate court held that the court erred, citing the doctrine of equitable estoppel. "The doctrine of equitable estoppel affirms that a defendant may not by his statements or conduct lull the plaintiff into a false sense of security resulting in inaction. [Citations.] The determination of whether a defendant's conduct is sufficient to invoke the doctrine is a factual question entrusted to the trial court's discretion. [Citation.] The issue is whether, viewing the evidence and all the inferences therefrom in the light most favorable to [the judgment] there was substantial evidence upon which the court could reasonably have found as it did." (*Cuadros* v. *Superior Court, supra,* 6 Cal.App.4th at p. 675.)

Here, as in *Cuadros* v. *Superior Court, supra,* 6 Cal.App.4th at p. 671, the named defendants conducted themselves as though they were the

proper defendants, then sought to use Carr's mistake to shield the entity which should have been named. Appellants argue that there is no evidence that they concealed the true identity of the hotel's owner from Carr, and that by examining her own W-2 forms, which were after a certain time issued by Peppercorn, she could have discovered the true owner. A similar argument was raised in *Cuadros*, where the plaintiff could have discovered the car's true owner through a Department of Motor Vehicles inquiry. "[I]t was entirely reasonable, under the circumstances of this case for [plaintiff's] counsel to have relied on the acts and statements of defendants in concluding that he had named the proper parties. Moreover, we are more concerned with balancing the equities than with highlighting the negligence of . . . counsel. When all the circumstances are considered, the equities overwhelmingly favor" affirming the trial court on this issue. (*Id.* at pp. 677-678.)

Here too, the equities overwhelmingly favor affirmance. The ruling allowing an amendment resulted in no prejudice to Peppercorn. A reversal of that ruling would work an injustice, and we decline to make such an order.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The amended judgment is affirmed, and the award of punitive damages is reversed. Each party to bear its own costs on appeal.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 25, 1994.

---

*See footnote, *ante*, page 14.