In re Roger LEVANDER; Josie Levander, Debtors.

Roger Levander; Josie Levander, Appellants,

v.

Edwin Prober; Elias Miller; Peter Miller, Estate of; All Carr Communications Company; Calgrind Homes Inc.; Dalby Homes Inc.; Denormandia Land Co.; Dreamland Homes Inc.; Effington Homes Inc.; Eldridge Corporation; Floraday Park Inc.; Granton Homes Inc.; Gregory Knolls Inc.; Ladds Homes Inc.; Laurel Apartments; Miller Mortgage Co.; Millgee Investment Co. Inc.; Phalanx Homes Inc.; Prichard Homes Inc.; Rowena Homes Inc.; Shepard Homes Inc.; Suffolk Homes Inc.; Thrifty Estates Inc., Appellees.

No. 97–56525.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 27, 1999.

Filed July 7, 1999.

Amended July 20, 1999.

Daniel J. McCarthy, Hill, Farrer, & Burrill, Los Angeles, California, for the appellants.

Irving M. Gross, Robinson, Diamant, Brill, & Klausner, Los Angeles, California, for the appellees.

Before: FERGUSON, O'SCANNLAIN, and TASHIMA, Circuit Judges.

## ORDER

The opinion filed on July 7, 1999, is amended to include Judge Ferguson's concurring opinion attached hereto.

## OPINION

TASHIMA, Circuit Judge:

In December, 1993, the bankruptcy court awarded attorneys' fees to Chapter 11 debtors Roger and Josie Levander against All–Carr Communications Company, Inc. ("Corporation"). In November, 1996, the bankruptcy court entered two orders that amended the December, 1993, order to add All–Carr Communications Company, a general partnership ("Partnership"), as an additional judgment-debtor. On appeal, the district court reversed the November, 1996, order for lack of jurisdiction. The Levanders appeal, contending that jurisdiction existed to amend the original order under the bankruptcy court's inherent equitable powers, Rule 60(a) and (b) of the Federal Rules of Civil Procedure, and § 187 of the California Code of Civil Procedure. We have jurisdiction under 28 U.S.C. § 158(d), and we reverse. We hold that the bankruptcy court had jurisdiction to amend its order under § 187 and its inherent power based on the fraud perpetrated upon it by the Corporation and the Partnership.

### I.

The Levanders owned a cellular telephone service company. In 1991 and 1992, they filed separate bankruptcy petitions, which were consolidated in April, 1992, and thereafter jointly administered. On July 29, 1992, the Corporation filed a proof of claim against the Levanders' bankruptcy estate alleging a nonpriority general unsecured claim for $714,742.21 that the Levanders owed the Corporation on three promissory notes. At a hearing on July 30, 1993, the bankruptcy court disallowed this claim on the ground that the Corporation had previously accepted stock in satisfaction of the obligation. The bankruptcy court confirmed the Levanders' plan of reorganization on August 11, 1993.

On August 20, 1993, the Corporation appealed the confirmation order and the order disallowing its claim. The bankruptcy court, the bankruptcy appellate panel (BAP), and this court all refused to grant the Corporation's motion for a stay of the confirmation pending appeal. The Corporation subsequently abandoned its appeal and the BAP dismissed the Corporation's appeal with prejudice on September 30, 1994.

Meanwhile, on December 13, 1993, the bankruptcy court granted the Levanders' motion for attorneys' fees and costs totaling $44,170.00 against the Corporation for the time period of May 17, 1993, through August 31, 1993. The court did not know of the existence of the Partnership or that the Corporation had transferred its assets, so it awarded the attorneys' fees and costs only against the Corporation. The reason the court so believed was that when one of the Corporation's officers was asked during a May, 1993, deposition whether the Corporation's assets had been sold, he answered: "No. The assets haven't been sold." To the question of "as far as you know, All–Carr Communications [Corporation] is still an active company?" the same officer answered: "Yes. They still have the [cellular telephone] numbers and is active." The court ordered the Corporation to pay the awarded amount, but reserved final judgment on the total amount of fees and costs to be awarded until the Corporation's appeal was completed.

On July 20, 1995, after unsuccessfully seeking voluntary payment from the Corporation, the Levanders had the marshal levy a writ of execution against the Corporation's bank accounts. That same day, a former employee of the Corporation responded to the writ, stating that she owned what had been the Corporation's assets in the bank and produced a bill of sale to that effect. This bill of sale, dated December 7, 1993,[1] showed that the Partnership had transferred to her the ownership of what had formerly been the Corporation's assets, including the store, inventory, and all of the equipment, for one dollar.

On September 29, 1995, the Levanders requested documents and depositions from the Corporation's officers regarding the sale or transfer of the Corporation's assets. On the day that production was to commence, the Corporation filed a voluntary bankruptcy petition, which stayed discovery. The Corporation's bankruptcy filing also prevented the Levanders from proceeding with a motion they had filed for additional attorneys' fees against the Corporation. The Levanders then filed a motion under Rule 2004 of the Federal Rules of Bankruptcy Procedure, which was granted on November 14, 1995, for the same documents and depositions.

These documents and depositions revealed that the assets traveled in a circle. Beginning on February 4, 1993, months before the officer testified that the Corporation still had its assets, the Corporation transferred its assets to 19 corporate entities. These corporate entities later conveyed the Corporation's assets to the Partnership, which had been formed on February 25, 1993. Finally, in December, 1993, the Partnership sold the assets to the former employee for one dollar.

On June 14, 1996, the Levanders filed a motion to amend the attorneys' fees order to designate the Partnership as an additional judgment-debtor.[2] On November 6, 1996, the bankruptcy court granted the motion to amend the order, stating that "equity screams for some remediation"[3]

---

1. The Partnership sold everything one day after this court denied the Corporation's motion for a stay pending appeal, and only five days after the bankruptcy court ruled that the Levanders were entitled to recover their fees and costs from the Corporation.

2. The Levanders also included Edwin Prober, Elias Miller, the Estate of Paul Miller, and the 19 corporations in their motion to amend the judgment. The bankruptcy court denied this part of the Levanders' motion, a decision the Levanders do not appeal.

3. During its October, 1996, hearing to determine whether to add the Partnership as a judgment-debtor, the bankruptcy court char-

because the Partnership was the real party in interest in the Corporation's litigation against the Levanders' estate.[4] The Partnership appealed the order to the BAP on November 15, 1996, and, on December 30, 1996, the appeal was transferred to the district court.

On September 25, 1997, the district court entered an order reversing the decision of the bankruptcy court to add the Partnership as a judgment-debtor for lack of jurisdiction. Specifically, the district court concluded that the ten-day time limit of Federal Rule of Civil Procedure 59(e) had expired. The district court also held that § 187 of the California Code of Civil Procedure did not govern because the federal—not state—rules of procedure control in bankruptcy court.

## II.

"We stand in the same position as did the district court in reviewing the bankruptcy court's order." *United States v. Wyle (In re Pacific Far E. Lines, Inc.)*, 889 F.2d 242, 244 (9th Cir.1989). We therefore review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.)*, 165 F.3d 1243, 1245 (9th Cir. 1999).

## III.

### A.

"The inherent powers of federal courts are those that 'are necessary to the exercise of all others.'" *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (quoting *United States v. Hudson*, 11 U.S.

(7 Cranch) 32, 34, 3 L.Ed. 259 (1812))). This inherent power, which is based on equity, *see Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), not only springs forth from courts' traditional power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)), but also "furthers the pursuit of achieving complete justice by enabling the court to suspend those judgments whose enforcement leads to inequitable results." *Hadix v. Johnson*, 144 F.3d 925, 937 (6th Cir.1998). In *Chambers*, the Supreme Court observed that the inherent power of federal courts includes, *inter alia*, the power to vacate judgments on proof that a fraud upon the court has been committed. *See Chambers*, 501 U.S. at 44, 111 S.Ct. 2123.

The Court justified the "historic power of equity to set aside fraudulently begotten judgments" on the basis that "tampering with the administration of justice in this manner involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* (internal quotation marks and alterations omitted) (citation omitted); *see also Hazel–Atlas Glass Co.*, 322 U.S. at 246, 64 S.Ct. 997 ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946) (bribery of judge).

---

acterized the Corporation's earlier deposition testimony as "plain not true."

4. The bankruptcy court actually filed two separate orders on November 6, 1996, both of which granted the Levanders' motion to amend the judgment to add the Partnership as an additional judgment-debtor. In addition to granting the motion to amend, the first

order awarded the Levanders an additional $37,051.85 in fees and costs against the Partnership for the time period September 1, 1993, through March 31, 1996. The second order specifically amended paragraphs 1–4 of the original order so that it included both the Partnership and Corporation as judgment-debtors. To facilitate discussion, we refer to the two orders as the "order."

Just as a court may use its inherent power to protect its integrity by vacating a judgment obtained by fraud, it also may amend a judgment for the same purpose. When a court vacates a judgment obtained by fraud, it not only rids itself of the defilement caused by the fraud, but also restores balance and fairness between the parties by removing the benefit gained by the party that committed the fraud. Amending a judgment serves these same goals by removing the benefit—for example, the avoidance of a judgment against itself—that the party gained by committing fraud on the court.

█ We therefore hold that a federal court may amend a judgment or order under its inherent power when the original judgment or order was obtained through fraud on the court.[5] *Cf. Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir.1995) (non-disclosure of existence of videotape containing unfavorable results amounted to fraud on the court, thereby justifying new trial).

█ Thus, the bankruptcy court had the inherent power to amend its judgment to add the Partnership as an additional judgment-debtor based on the fraud committed upon it.[6] We now turn to the question of whether the Corporation and the Partnership committed fraud upon the bankruptcy court.

### B.

█ A court must exercise its inherent powers with restraint and discretion in light of their potency. *See Chambers*, 501 U.S. at 44, 111 S.Ct. 2123. Although the term "fraud on the court" remains a "neb-

ulous concept," *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080, 1085 (Fed.Cir.1993), that phrase "should be read narrowly, in the interest of preserving the finality of judgments." *Toscano v. Commissioner*, 441 F.2d 930, 934 (9th Cir.1971).

█ Simply put, not all fraud is fraud on the court. To constitute fraud on the court, the alleged misconduct must "harm[ ] the integrity of the judicial process." *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.1989). To determine whether there has been fraud on the court, this circuit and others apply Professor Moore's definition:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*Gumport v. China International Trust and Inv. Corp. (In re Intermagnetics America, Inc.)*, 926 F.2d 912, 916 (9th Cir.1991) (quoting 7 James Wm. Moore et al., Moore's Federal Practice ¶ 60.33, at 515 (2d ed. 1978)).

█ Generally, non-disclosure by itself does not constitute fraud on the court. *See England v. Doyle*, 281 F.2d 304, 310 (9th Cir.1960) (failure to produce evidence, without more, does not constitute fraud on the court). Similarly, perjury by a party or witness, by itself, is not normally fraud on the court. *See, e.g., Gleason v. Jandrucko*, 860 F.2d 556, 559–60 (2d Cir.1988);

---

**5.** Although motions for relief from judgment may also be brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Rule 60(b)'s savings clause specifically provides that the rule "does not limit the power of a court ... to set aside a judgment for fraud upon the court." Fed.R.Civ.P. 60(b); *see also id.* at advisory committee notes, 1946 amendment ("[T]he rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause.").

**6.** The inherent power of Article III courts to amend a judgment extends to bankruptcy courts. *Cf. Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir.1996) (noting that 11 U.S.C. § 105(a) provides bankruptcy courts with the authority to issue orders necessary "to prevent an abuse of process," including the power to sanction) (quoting 11 U.S.C. § 105(a)).

12 James Wm. Moore & Joseph T. McLaughlin, Moore's Federal Practice § 60.21[4][c], at 60–56–57 (3d ed.1998). The *Gleason* court reasoned that since perjury is an evil that could and should be exposed at trial, it should not qualify as fraud upon the court. *See Gleason,* 860 F.2d at 560.

The reason why the courts in these cases did not treat perjury or non-disclosure alone as fraud on the court was that the plaintiff had the opportunity to challenge the alleged perjured testimony or non-disclosure because the issue was already before the court. For example, in *Gleason,* Gleason could have deposed eyewitnesses and introduced evidence at trial to impeach the police officers' testimony, which he claimed was perjured, because the issues of lack of probable cause and bad faith on the part of the officers, and therefore their credibility, were already before the court. *See id.* at 559. The court concluded that Gleason could not, after the fact, claim fraud on the court based only on this alleged perjury, which he could have challenged during the trial. *See id.* at 559–60.

In contrast, the perjury and non-disclosure in the instant case (that the Corporation had transferred its assets to shell entities months before the Corporation testified in depositions that the Corporation's "assets haven't been sold") was not—and could not have been—an issue at the attorneys' fees hearing, as neither the court nor the Levanders knew that the Partnership existed. Therefore, neither the Levanders nor the court had any reason to question the veracity of the Corporation with respect to whether the Corporation still possessed its assets. Further, not only did the Corporation and the Partnership deceive the Levanders, but they also deceived the court, because the court relied on the Corporation's depositions to impose attorneys' fees on the Corporation, rather than on the party with the assets—the Partnership. *See, e.g., Broyhill Furniture Indus., Inc.,* 12 F.3d at 1086–87 (although party knowingly withheld material and thereafter sought enforcement of a fraudulently obtained patent, there was no fraud on the court because fraudulent evidence used to obtain patent from patent office was not submitted to court, so court itself was not victim of fraud); *In re Intermagnetics Am., Inc.,* 926 F.2d at 917 ("[T]he inquiry as to whether a judgment should be set aside for fraud upon the court … focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process."). Therefore, since the bankruptcy court itself was defiled by the perjury, the fraud was a fraud on the court.

## IV.

In ruling that the bankruptcy court did not have jurisdiction to amend its order, the district court rejected the Levanders' argument that § 187 of the California Code of Civil Procedure [7] applied, concluding that "the federal, not state, rules of procedure … govern in bankruptcy court." We disagree.

### A.

■ We have held that Federal Rule of Civil Procedure 69(a) [8] empowers federal

---

7. Section 187 provides:

When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.

Cal.Civ.Proc.Code § 187.

8. Rule 69(a) provides:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time

courts to rely on state law to add judgment-debtors under Rule 69(a), which "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." *Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir.1998) (quoting *Peacock v. Thomas*, 516 U.S. 349, 359 n. 7, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996)) (internal quotation marks omitted).[9] In *Cigna*, the appellant, much like the appellees in the instant case, argued that the motion to amend the judgment to add a judgment-debtor was untimely under Rule 59(e), and that the court therefore had no jurisdiction. *See id.* We rejected this argument, holding that Rule 69(a) allows judgment-creditors to use state law to collect on their debts. *See id.* Because California law allows amendment of a judgment to add a judgment-debtor, we held that the district court did not abuse its discretion in so doing. *See id.* at 421–22.

The instant case is analogous since the Levanders also were judgment-creditors attempting to collect on a debt. As such, Rule 69(a) authorized the use of California law to collect on their debt, and the district court erred by holding that the bankruptcy court did not have the jurisdiction to allow them to do so.

Finally, we must determine whether the requirements of California law were met in order to add the Partnership as a judgment-debtor.

> the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment-debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.
> Fed.R.Civ.P. 69(a).

9. The district court did not have the benefit of *Cigna* at the time it made its ruling.

**B.**

Under California Code of Civil Procedure § 187, a court "has the authority to amend a judgment to add additional judgment debtors." *Issa v. Alzammar*, 44 Cal.Rptr.2d 617, 38 Cal.App.4th Supp. 1, 4 (1995); *see also Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conference Ctr. Bd.*, 41 Cal.App.4th 1551, 1554–55, 49 Cal. Rptr.2d 286 (1996). To amend a judgment under § 187, two requirements must usually be met: "(1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Triplett v. Farmers Ins. Exchange*, 24 Cal.App.4th 1415, 1421, 29 Cal. Rptr.2d 741 (1994).[10]

**1.**

When the bankruptcy court evaluated whether it had authority under California law to amend its order to add the Partnership as a judgment-debtor, it relied primarily on *Carr v. Barnabey's Hotel Corp.*, 23 Cal.App.4th 14, 28 Cal.Rptr.2d 127 (1994). *Carr* involved a situation analogous to the instant case. Carr had sued and obtained a judgment against Barnabey's Hotel Corporation (the original judgment-debtor) for sex and pregnancy discrimination, wrongful termination, and fraud. *See id.* at 16–17, 28 Cal.Rptr.2d 127. Barnabey's Hotel Corporation answered the complaint and defended the case at trial, *see id.* at 20, 28 Cal.Rptr.2d

10. A motion to amend a judgment under § 187 must also be made within a reasonable time. *See, e.g., Cigna*, 159 F.3d at 421; *Alexander v. Abbey of the Chimes*, 104 Cal.App.3d 39, 48–49, 163 Cal.Rptr. 377 (1980) (court abused its discretion in granting motion to amend judgment after an almost seven-year delay because movants had no reasonable explanation). The Levanders discovered the fraudulent conduct of the Corporation and Partnership in late 1995 and filed the motion to amend in June, 1996. We find this period of time to be reasonable. *See Cigna*, 159 F.3d at 421 (seven and one-half month delay was reasonable).

127, as did the Corporation in the instant case. But, Barnabey's Hotel Corporation had ceased doing business before the trial, had no assets or source of income, and never held title to the hotel, *see id.*, just as the Corporation in the instant case had transferred all of its assets prior to appearing before the bankruptcy court. Peppercorn (the added judgment-debtor in *Carr*) was a limited partnership with the same president and partners as the officers of Barnabey's Hotel Corporation, *see id.*, just as the Partnership and Corporation in the instant case have many of the same officer/partners. Furthermore, Peppercorn had been doing business as Barnabey's Hotel and Restaurant. *See id.* The appellate court in *Carr* upheld the trial court's amendment of the judgment to add Peppercorn as a judgment-debtor and stated:

> Under Code of Civil Procedure 187, the court had the authority to amend the judgment to add a judgment debtor. Carr's error essentially amounted to no more than a variance between pleading and proof. The decision to grant an amendment in such circumstances lies in the sound discretion of the trial court. "The greatest liberality is to be encouraged in the allowance of such amendments in order to see than justice is done." Justice was obviously served by the amendment.
>
> It is not too much to say that Peppercorn's conduct approached a fraud on the court. Carr sued the right party under the wrong name, a fact which must have been clear to the defense from the inception of the litigation. Yet, nothing was said about the mistake in any deposition, motion, or other proceeding.

*Id.* at 20–21, 28 Cal.Rptr.2d 127 (citations omitted).

The instant case is indistinguishable. The Levanders pursued the Corporation for attorneys' fees because they thought, as a result of the Corporation's officer's testimony and the fact that the Corporation continued to argue its claim against the Levanders' estate, that the Corporation was the proper party with the assets, when all along, the Corporation knew and did not disclose to the court, that the Partnership had control of the assets. Therefore, just as in *Carr,* the instant case involved conduct that amounted to fraud on the court.

The amended judgment-debtors in *Carr* argued, as the appellees do in this case, that they were not the alter egos of the original judgment-debtor and therefore could not be added as judgment-debtors pursuant to § 187. *See id.* at 21, 28 Cal. Rptr.2d 127. The *Carr* court rejected this argument and affirmed the trial court's amendment of the judgment explicitly without a finding of alter ego, stating that "the equities overwhelmingly favor" it. *Id.* at 22–23, 28 Cal.Rptr.2d 127.

The *Carr* court looked to the "equitable principles regarding alter ego" and concluded that although the added judgment-debtor did not meet the formal requirements for alter ego liability, it nevertheless fit within the theory underlying amendment of a judgment based on alter ego liability. That is, "the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." *Id.* at 21, 28 Cal. Rptr.2d 127. The court then reasoned that by not allowing amendment due to the absence of a finding of alter ego would "work an injustice." *Id.* at 23, 28 Cal. Rptr.2d 127.

Therefore, under the authority of *Carr,* a finding that the Partnership was the alter ego of the Corporation was not required to add the Partnership as a judgment-debtor.[11]

11. We recognize that there is California case authority to the contrary. *See Triplett,* 24 Cal.App.4th at 1420–21, 29 Cal.Rptr.2d 741 (not allowing amendment without finding of alter ego). We believe, however, that *Carr* is the better reasoned case and the path that the California Supreme Court would follow. *See Elliott v. City of Union City,* 25 F.3d 800, 802 n. 3 (9th Cir.1994).

## 2.

The second requirement for amendment under § 187 is that the added party " 'controlled' the litigation." *Triplett*, 24 Cal.App.4th at 1421, 29 Cal. Rptr.2d 741. The bankruptcy court did not clearly err in finding that this requirement was met in the instant case. The Partnership in essence controlled the litigation because the same group of individuals comprised the Partnership and the Corporation, they were present during the litigation, and one of the partners even contributed deposition testimony. Thus, adding the Partnership as a judgment-debtor raises no due process concerns. *See, e.g., Farenbaugh & Son v. Belmont Constr., Inc.*, 194 Cal.App.3d 1023, 1031, 240 Cal.Rptr. 78 (1987) (allowing amendment of judgment to add judgment-debtor when new debtor "was not a passive participant by any manner of means in that original trial."); *Alexander*, 104 Cal. App.3d at 45–46, 163 Cal.Rptr. 377 (approving amendment of judgment to add name of corporate judgment-debtor's sole stockholder).

In sum, since Rule 69(a) authorizes judgment-creditors to use state law to collect on their debts and § 187 applies in the instant case, the bankruptcy court had jurisdiction to amend its order to add the Partnership as a judgment-debtor.

## V.

The district court erred when it reversed the bankruptcy court's order, because the bankruptcy court had jurisdiction to add the Partnership as a judgment-debtor under both its inherent power and § 187 of the California Code of Civil Procedure. Accordingly, we **REVERSE** the decision of the district court and **REMAND** with directions that the bankruptcy court's order be affirmed.

FERGUSON, Circuit Judge, concurring:

When an appellate court has alternative bases for its holding, it cannot be claimed that all but one of the bases is unnecessary dicta. Part III of the Court's opinion here is not irrelevant to our disposition of the matter, as the special concurrence claims; rather, it is an alternative holding providing one of two independent bases for supporting our disposition. *Cf. United States Steel Corp. v. United States Environmental Protection Agency*, 444 U.S. 1035, 1038, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980) (Rehnquist, J., dissenting from denial of certiorari) (recognizing that alternative holdings are not dicta).

O'SCANNLAIN, Circuit Judge, specially concurring:

As the opinion makes plain, we have previously recognized that Federal Rule of Civil Procedure 69(a) allows recourse to state procedures for the execution of a federal judgment. *See Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir.1998). Because California law permits the amendment of the judgment to add judgment debtors like the partnership here, *see Carr v. Barnabey's Hotel Corp.*, 23 Cal.App.4th 14, 20–21, 28 Cal.Rptr.2d 127 (1994), we need not reach nor resolve the novel question of whether a federal court's inherent equity powers permit such amendment. Rather than make new law unnecessarily, and in dicta, no less, I would leave the resolution of this question for another day.

While I concur in the result and in parts I, II, and IV, I cannot join part III of the opinion or that portion of part V which relies on the alternative "inherent powers" ground.