**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.    CC-14-1526-KiBrD |
| ) | |
| DANNY WAYNE PRYOR, ) | Bk. No.    09-23842-BR |
| ) | |
| Debtor. ) | Adv. No.   09-2291-BR |
| _____ ) | |
| ) | |
| DANNY WAYNE PRYOR, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| RW INVESTMENT COMPANY, INC., ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on July 23, 2015,
at Pasadena, California

Filed - August 3, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:    Appellant Danny Wayne Pryor argued pro se; Appellee
RW Investment Company, Inc. did not appear for oral
argument.

Before:   KIRSCHER, BRANDT[2] and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2] Hon. Philip H. Brandt, Bankruptcy Judge for the Western
District of Washington, sitting by designation.

Appellant, chapter 7[3] debtor Danny Wayne Pryor ("Pryor"), appeals an order denying his motion for relief from judgment under Civil Rule 60(d)(1) and (3). Previously, the bankruptcy court determined by way of default judgment that the debt of appellee, RW Investment Co., Inc. ("RW"), was excepted from discharge under § 523(a)(2)(A) and that Pryor's discharge was denied under § 727(a)(2), (3), (4) and (5) ("RW Judgment"). On appeal, the Panel affirmed the bankruptcy court's § 523(a)(2)(A) ruling, but vacated the § 727 rulings because RW had abandoned those claims at the prove-up hearing. Pryor appealed the Panel's decision to the Ninth Circuit, which affirmed. Pryor then sought relief from the RW Judgment under Civil Rule 60(b), which the bankruptcy court denied. Pryor's appeal of that order to the Panel was dismissed as untimely. Presenting the same arguments, Pryor then filed the instant motion seeking relief from the RW Judgment under Civil Rule 60(d), which the bankruptcy court denied. We AFFIRM.[4]

///

///

///

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] Despite the over 300 pages Pryor submitted in his excerpts of the record, he failed to submit the two documents we need for proper review of this appeal — the motion and related order at issue. RW did not do much better. In its one-page response brief, which fails to present any substantive argument, RW quoted the bankruptcy court's order denying Pryor's motion in its entirety but failed to submit an excerpt of the record containing the missing order. Therefore, we had to review these (and other) documents electronically. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

-2-

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[5]

RW is engaged in the business of real estate investments, construction and development. Its sole shareholders are brothers Ronald and Robert Wilson (collectively, "Wilsons"). Ronald Wilson is an attorney and has represented RW throughout these proceedings.

In 2003, RW purchased a property for the purpose of constructing six townhomes. To fund the project, RW obtained a loan from IndyMac Bank in July 2005 for $1.8 million. RW engaged Pryor in February 2006 as the general contractor for the project.

The townhouse project suffered several setbacks requiring extensions on the loan's maturity date from IndyMac Bank. As part of the second extension agreement, IndyMac required RW to enter into a new agreement with Pryor to complete work on the townhouses. RW entered into a written agreement with Pryor known as the Real Estate Construction and Purchase Agreement on February 24, 2007 ("RECPA"). Indymac conditioned its approval of the RECPA by insisting that Pryor take over complete financial, management and construction control of the townhouse project pursuant to a written Assumption Agreement dated March 29, 2007. Under the RECPA, RW sold the property to 704 Market, LLC, an entity wholly owned by Pryor. The property was purchased with a promissory note for $525,000 in favor of RW. Although 704 Market, LLC assumed responsibility for payment of the IndyMac loan, RW's promise to repay the loan and the Wilsons' guarantees remained in

---

[5] A more thorough background of this appeal can be found in the Panel's Memorandum Decision issued on August 12, 2011, in Case No. 10-1259-PaKiSa.

-3-

effect. The Assumption Agreement provided these same terms.

Ultimately, the townhouse project never came to fruition. Pryor and/or his entity failed to pay RW on the $525,000 promissory note and IndyMac foreclosed on the property. RW sued Pryor, his related entities, IndyMac Bank and others in Los Angeles Superior Court in April 2008 (BC389267). In July 2008, IndyMac was closed by the Office of Thrift Supervision and its assets were transferred to the FDIC as conservator. The FDIC was appointed receiver of the newly chartered institution, IndyMac Federal Bank, in March 2009.

**A.     The underlying bankruptcy case and prior appeal**

Pryor filed his first bankruptcy case under chapter 11 on March 28, 2008. The court dismissed that case on May 21, 2008, for cause under § 1112(b) in an order containing a one-year bar from filing another bankruptcy case. In violation of the order, Pryor filed a chapter 7 case on March 9, 2009. That case was promptly dismissed on May 5, 2009.

On June 7, 2009, Pryor filed yet another chapter 7 case, which led to the prior appeal before the Panel and this appeal. After unsuccessfully moving to have that case dismissed, RW filed a nondischargeability and denial of discharge complaint against Pryor seeking relief under §§ 523 and 727 on the grounds of fraud and embezzlement. Pryor filed his answer pro se. As a sanction for Pryor's failure to appear at a status conference and comply with RW's discovery requests, the bankruptcy court struck his answer and entered a default.

RW then moved for a default judgment, supported with exhibits and an extensive declaration from Ronald Wilson. RW sought entry

-4-

of a $997,988.45 nondischargeable fraud judgment against Pryor. After a prove-up hearing on June 30, 2010, the bankruptcy court entered the RW Judgment for the requested amount on July 19, 2010. Pryor appealed. The Panel affirmed the RW Judgment on the § 523(a)(2)(A) claim, but vacated the § 727 rulings and remanded the matter to the bankruptcy court to enter an amended judgment.[6] Pryor appealed. The Ninth Circuit affirmed on October 23, 2013. It denied Pryor's request for rehearing on February 21, 2014, and issued a mandate on May 5, 2014.

**B.    Pryor's motions to set aside the RW Judgment**

Meanwhile, Pryor filed his first motion to set aside the RW Judgment on March 31, 2014, seeking relief under Civil Rule 60(b)(1) and (2). The gist of Pryor's motion was that RW had committed "extrinsic fraud" against him and the bankruptcy court by not disclosing that RW lacked standing to sue him, because RW had sold the property and assigned all of its rights to the townhouse project to 704 Market, LLC pursuant to the RECPA and Assumption Agreement. Pryor further complained that because RW lacked standing, its filed "Proof of Claim" was a fraud perpetrated against him and on the bankruptcy court. Pryor made such assertions even though RW's promise to repay the loan and the Wilsons' guarantees remained in effect.

Pryor contended that his newly discovered evidence proving that RW lacked standing and owed him money was not available at the time of the prove-up hearing, because "all records" were being withheld from IndyMac Bank due to its seizure by the FDIC. Had

---

[6] The bankruptcy court entered an amended judgment on September 13, 2011.

-5-

this evidence been before the bankruptcy court at the prove-up hearing, argued Pryor, the court would not have entered the RW Judgment. Pryor's evidence included a February 20, 2006 promissory note for $407,450 executed by RW in favor of Acres, Inc., another entity owned by Pryor, and the RECPA and the Assumption Agreement, which showed that RW had sold the property and its rights to the townhouse project to 704 Market, LLC in March 2007.

RW objected to Pryor's motion on the basis that it had not been filed within one year of the RW Judgment and was therefore untimely.

In his reply, Pryor contended the motion was not untimely based on the Ninth Circuit's mandate dated May 15, 2014. He also attempted to assert a new claim for relief under Civil Rule 60(d)(1) and (3) for "fraud upon the court."

The bankruptcy court denied Pryor's first motion to set aside the RW Judgment on June 30, 2014. The order (drafted by Ronald Wilson) fails to state the basis for why the motion was denied, but according to the transcript from the hearing (which Pryor has provided), the bankruptcy court denied it because Pryor had not shown any evidence of "fraud upon the court" and because it was untimely. The Panel dismissed Pryor's appeal of that order on July 21, 2014, as untimely.

In a related adversary proceeding involving another creditor, ITEC Financial, Inc., Pryor had also sought relief from ITEC's nondischargeable fraud judgment under Civil Rule 60(b) and (d) after that judgment had been affirmed by this Panel and the Ninth Circuit. During the course of that proceeding, the bankruptcy

court entered two orders on July 7, 2014, declaring Pryor a vexatious litigant: one in the ITEC adversary, the other in Pryor's main bankruptcy case. Pryor was ordered to seek court permission before filing any further documents. Pryor did not appeal the vexatious litigant orders.

Not deterred by the bankruptcy court's previous ruling or the vexatious litigant orders, Pryor filed his second motion to set aside the RW Judgment on October 23, 2014, this time seeking relief under Civil Rule 60(d)(1) and (3). Although titled under a different subsection of Civil Rule 60, Pryor's second motion reiterated the same arguments as in the first motion, contending that RW had committed fraud upon him and the bankruptcy court and that his newly discovered evidence would prove it. Pryor's motion indicated that he did not want a hearing.

The next day, the bankruptcy court entered an order denying Pryor's second motion to set aside the RW Judgment for failure to show good cause ("Order"). The Order reads as follows:

> This Motion is the latest in a lengthy series of baseless motions seeking reconsideration of this Court's rulings. The Motion is also in direct violation of this Court's "Order Determining That the Debtor Is a Vexatious Litigant," entered in this chapter 7 case on July 7, 2014. In addition, the debtor filed the Motion without first filing a motion and obtaining a court order for approval to file any additional documents in this case, in violation of the July 7, 2014 Order.
>
> The Court has considered the Motion and all accompanying exhibits and will deny the Motion because no good cause has been shown for the relief sought therein. In addition, the Court has determined that it would deny the Motion for this reason even if the debtor had first filed an application and obtained approval to file it, as required by the July 7, 2014 Order.

Adv. No. 09-2291, dkt. no. 86. Pryor timely appealed the Order.

///

-7-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158(b).

## III. ISSUE

Did the bankruptcy court abuse its discretion when it denied Pryor's second motion to set aside the RW Judgment under Civil Rule 60(d)(1) and (3)?

## IV. STANDARD OF REVIEW

We review denials of motions for relief under Civil Rule 60 for an abuse of discretion. See United States v. Stonehill, 660 F.3d 415, 443 (9th Cir. 2011). Accordingly, we reverse where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from the record. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

## V. DISCUSSION

The only substantive argument we discern from Pryor's brief is that: RW committed fraud against him and on the bankruptcy court; and the bankruptcy court abused its discretion by refusing to hear the new evidence establishing RW's lack of standing to file the dischargeability action and the "Proof of Claim." According to the Order, the bankruptcy court considered the extensive documents Pryor submitted, but determined that he had failed to show good cause to grant his second motion to set aside the RW Judgment. In other words, the bankruptcy court determined

-8-

that Pryor had not established fraud on the court. Leaving aside that this issue had already been decided against Pryor in the order denying his first motion to set aside the RW Judgment and that ruling was not timely appealed, we address the merits of this appeal.

**A. The bankruptcy court did not abuse its discretion in denying Pryor's second motion to set aside the RW Judgment under Civil Rule 60(d)(1) and (3).**

**1. No relief was available under Civil Rule 60(d)(1).**

Although Pryor sought relief under Civil Rule 60(d)(1) and (3), incorporated by Rule 9024, no basis ever existed for relief under (d)(1). Civil Rule 60(d)(1) provides that the court may "entertain an independent action to relieve a party from a judgment, order, or proceeding."

For a movant to seek equitable relief through independent actions, the movant must: (1) show that no other remedy is available or adequate; (2) demonstrate that movants' own fault, neglect or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground — such as fraud, accident or mistake — for the equitable relief. Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 662 (2d. Cir. 1997). The movant must also establish that a "grave miscarriage of justice" will be done if the underlying judgment is not set aside. United States v. Beggerly, 524 U.S. 38, 47 (1998).

Pryor failed to meet virtually all of these requirements. First, another remedy was available. Pryor had previously moved for the same relief in his first motion to set aside the RW Judgment under Civil Rule 60(b), which was denied and unsuccessfully appealed. His second motion was nothing more than

-9-

a restatement of the same arguments and a "Hail Mary" reference to Civil Rule 60(d). Furthermore, Pryor's failure to comply with the rules of discovery and the bankruptcy court's pretrial schedule is what created the default and, ultimately, the RW Judgment. Thus, he is not without fault. Finally, Pryor's second motion failed to establish the "grave miscarriage of justice" that would occur if he were not allowed to file an independent action against RW for its alleged fraud committed in the underlying dischargeability action.

**2. Pryor failed to establish fraud on the court.**

Civil Rule 60(d)(3) allows a court to "set aside a judgment for fraud on the court." Such fraud "embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1104 (9th Cir. 2006) (quotations and citations omitted)(applying Civil Rule 60(b)). "Fraud on the court 'should be read narrowly, in the interest of preserving the finality of judgments.'" Id. (quoting Toscano v. Comm'r, 441 F.2d 930, 934 (9th Cir. 1971)).

The Ninth Circuit places a high burden on a plaintiff seeking relief from a judgment based on fraud on the court. Id. See Stonehill, 660 F.3d at 443 (burden of proof is a "clear and convincing" standard). The type of fraud asserted here must involve egregious conduct, such as an unconscionable plan or scheme designed to improperly influence the court in its decision. Latshaw, 452 F.3d at 1104 (citing Abatti v. Comm'r, 859 F.2d 115,

-10-

118 (9th Cir. 1988); Toscano, 441 F.2d at 934)). "Mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and 'perjury by a party or witness, by itself, is not normally fraud on the court.'" Stonehill, 660 F.3d at 444 (quoting Levander v. Prober (In re Levander), 180 F.3d 1114, 1119 (9th Cir. 1999)).

Pryor argued that RW had committed fraud on the court by failing to disclose that it lacked standing to bring any claims against him in the nondischargeability action, based on the fact that RW had sold the property and its rights to the townhouse project to 704 Market, LLC, Pryor's wholly-owned entity. Pryor argued that his newly discovered evidence of the February 20, 2006 promissory note from RW to Acres, Inc. and the RECPA and Assumption Agreement, which were not available at the time of the prove-up hearing, proved RW's lack of standing. Given RW's promise to repay the loan and that the Wilsons' guarantees remained in effect, Pryor's argument is without merit.

We agree with the bankruptcy court that Pryor did not meet his high burden here. RW's failure to disclose its alleged lack of standing, even if true, is not enough to constitute fraud on the court. Further, two of the documents Pryor complains of — the RECPA and the Assumption Agreement — were submitted by RW in support of its motion for default judgment. As for the February 20, 2006 promissory note, it is not clear if that document was presented to the bankruptcy court prior to the RW Judgment. However, it defies logic that IndyMac Bank, who was not a party to the 2006 note, was in sole control of that document and prevented Pryor from obtaining it for his defense at the prove-up

-11-

hearing in June 2010. Pryor never presented any evidence that he subpoenaed IndyMac to produce this (or any other) document he claims IndyMac controlled but was refused. Moreover, considering that the 2006 note was executed four years before the prove-up hearing in 2010, it was certainly evidence available to Pryor at the time.

We also reject Pryor's argument that only he, not RW, could file the "Proof of Claim." In support, Pryor cites to Rule 3001(e), which governs proofs of claim involving transferred claims. RW never filed a proof of claim in Pryor's chapter 7 bankruptcy case. Further, Pryor's case was a "no asset" case, so nothing would have been paid on any such claim had one been filed.

We also correct Pryor's contention that the bankruptcy court's vexatious litigant order was entered only in the ITEC adversary proceeding, thereby not prohibiting him from filing the second motion to set aside the RW Judgment. On July 7, 2014, the bankruptcy court also entered an identical vexatious litigant order in Pryor's main bankruptcy case, which prohibited him from filing **any** documents without first obtaining court approval. Nonetheless, Pryor was not prejudiced; the bankruptcy court considered the merits of his second motion to set aside the RW Judgment despite the order and his failure to obtain prior approval.

With his motions to set aside the RW Judgment, Pryor has repeatedly attempted to litigate RW's claims against him, which he failed to litigate in the first instance, contending that he complied with the parties' agreement(s) and that RW and the Wilsons defrauded him. We see no abuse of discretion by the

-12-

bankruptcy court in denying his second motion to set aside the RW Judgment.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.