**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRENDSETTAH USA, INC.; TRENDSETTAH, INC., *Plaintiffs-Appellants*, <br><br> v. <br><br> SWISHER INTERNATIONAL, INC., *Defendant-Appellee.* | No. 20-56016 <br><br> D.C. No. 8:14-cv-01664-JVS-DFM <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted January 14, 2022
Pasadena, California

Filed April 15, 2022

Before: Johnnie B. Rawlinson and Paul J. Watford, Circuit
Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Rawlinson

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Relief from Judgment

The panel affirmed in part and reversed in part the district court's grant of relief from a judgment entered in favor of the plaintiff after a jury trial in an antitrust action.

The jury returned a verdict against Swisher International, Inc., on Sherman Act and breach of contract claims brought by Trendsettah USA, Inc. After trial, the district court granted partial summary judgment in favor of Swisher on the antitrust claims. This court reversed and remanded with instructions for the district court to reinstate the jury's verdict. Following the remand, the district court granted Swisher's motion for relief from judgment on the grounds that Trendsettah's failure to disclose that its chief executive officer Akrum Alrahib engaged in a scheme to fraudulently avoid payment of federal excise taxes constituted fraud on the court under Fed. R. Civ. P. 60(d), and newly discovered evidence and fraud warranting a new trial pursuant to Rule 60(b)(2) and (b)(3). The district court denied Trendsettah's motions for reconsideration and for Rule 60(b) relief from the order granting Rule 60 relief. The district court then granted Trendsettah's motion to voluntarily dismiss its claims with prejudice in order to take an immediate appeal.

The panel held that Trendsettah's voluntary dismissal of its claims with prejudice did not deprive this court of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

jurisdiction. The panel followed *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952 (9th Cir. 2018), which distinguished *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), and held that a voluntary dismissal of remaining claims can render an earlier interlocutory order appealable, so long as the discretionary regime of Rule 23(f), governing review of class action orders, is not undermined. The panel distinguished *Langere v. Verizon Wireless Servs., LLC¸*983 F.3d 1115 (9th Cir. 2020), which implicated a statutory jurisdictional restriction imposed by the Federal Arbitration Act.

Reversing in part, the panel held that the district court abused its discretion in granting Swisher's Rule 60(d) motion based on fraud on the court. The panel held that fraud on the court must be established by clear and convincing evidence, and the relevant inquiry is whether the fraudulent conduct harmed the integrity of the judicial process, rather than whether it prejudiced the opposing party. A party must show willful deception, and mere nondisclosure of evidence is typically not enough to constitute fraud on the court. The panel concluded that Swisher presented no clear and convincing evidence that either Trendsettah or its attorneys was responsible for an intentional, material misrepresentation directly aimed at the district court. Accordingly, the district court erred in granting relief under Rule 60(d). The panel reversed the district court's dismissal of Trendsettah's breach of contract claims and remanded with instructions to reinstate the jury's verdict on those claims.

Affirming in part, the panel held that the district court did not abuse its discretion in granting Swisher's motion for relief from judgment premised on newly discovered evidence and fraud under Rule 60(b)(2) and (b)(3), with respect to Trendsettah's antitrust claims. Agreeing with other circuits,

the panel held that the Rule 60(b) motion was timely under Rule 60(c)(1)'s one-year limitation period, which restarted because the prior appellate decision substantially altered the district court's judgment.  The panel concluded that Swisher met the standard for relief from judgment because Trendsettah's tax evasion was relevant to antitrust liability and damages, and Swisher exercised reasonable diligence in discovering the fraud.

## COUNSEL

Thomas C. Goldstein (argued), Eric F. Citron, and Erica Oleszczuk Evans, Goldstein & Russell PC, Bethesda, Maryland; Mark Poe and Randolph Gaw, Gaw Poe LLP, San Francisco, California; for Plaintiffs-Appellants.

Theodore J. Boutrous Jr. (argued), Daniel Glen Swanson, and Samuel Eckman, Gibson Dunn & Crutcher LLP, Los Angeles, California; Cynthia E. Richman, Gibson Dunn & Crutcher LLP, Washington, D.C.; Joshua R. Mandell, Akerman LLP, Los Angeles, California; Michael C. Marsh and Ryan Alan Roman, Akerman LLP, Miami, Florida; for Defendants-Appellees.

**OPINION**

RAWLINSON, Circuit Judge:

Trendsettah USA, Inc. (Trendsettah) appeals the district court's order granting relief from judgment pursuant to Federal Rule of Civil Procedure 60 (Rule 60) in favor of Swisher International, Inc. (Swisher). After a jury trial, Trendsettah was awarded $14,815,494 on its Sherman Act claim, and $9,062,679 on its breach of contract claim. The district court entered judgment in favor of Trendsettah, trebling the antitrust damages to $44,446,482.00 and reducing the contract damages to zero by stipulation. After trial, the district court reconsidered Swisher's motion for summary judgment and granted partial summary judgment in favor of Swisher on the antitrust claims. We reversed the district court's grant of summary judgment, and instructed the district court to reinstate the jury's verdict. *See Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 761 F. App'x 714, 718 (9th Cir. 2019).

Following the remand, Swisher filed a Rule 60 motion for relief from judgment based on its discovery that Akrum Alrahib (Alrahib), Trendsettah's chief executive officer, engaged in a scheme to fraudulently avoid payment of federal excise taxes. The district court granted Swisher's motion after concluding that Trendsettah's failure to disclose Alrahib's tax fraud constituted fraud on the court under Rule 60(d), and newly discovered evidence and fraud warranting a new trial pursuant to Rule 60(b)(2) and (b)(3).

Trendsettah contends that the district court abused its discretion in granting Swisher's Rule 60 motion because: (1) the district court failed to apply the correct standards to

determine that there was fraud on the court, (2) Swisher's Rule 60(b) motion was untimely,(3) Swisher failed to exercise reasonable diligence in discovering Alrahib's fraud; and (4) any fraud committed by Alrahib did not impact the ultimate damages calculation presented by Trendsettah's expert.

We have jurisdiction under 28 U.S.C. § 1291, and we hold that the district court abused its discretion in granting Swisher's Rule 60(d) motion based on fraud on the court. However, the district court did not abuse its discretion in granting Swisher's motion for relief from judgment premised on newly discovered evidence and fraud under Rule 60(b)(2) and (b)(3), with respect to Trendsettah's antitrust claims. Accordingly, we reverse the district court's dismissal of Trendsettah's breach of contract claims and remand with instructions to reinstate the jury's verdict on those claims. We affirm the district court's grant of Rule 60(b) relief as to Trendsettah's antitrust claims.

## I.  BACKGROUND

In this protracted litigation, Trendsettah alleged that Swisher "maintain[ed] its monopoly of the market for the small cigars known as cigarillos, through taking anti-competitive actions targeting [Trendsettah,] a competitor in the cigarillo market." According to Trendsettah, it "entered the cigarillo market by contracting with Swisher to have Swisher exclusively manufacture [Trendsettah's] cigarillos, which [Trendsettah] marketed and sold under the brand name Splitarillo." Trendsettah alleged that "Swisher decided that rather than compete in the open market with the Splitarillo brand, it could best protect its monopoly by restricting the supply of Splitarillos," and that "Swisher began refusing to

fulfill the orders for Splitarillos that [Trendsettah] placed, or sabotaged such orders, in violation of the contract that it had agreed to, which contained no limit as to the number of cigarillos Swisher would manufacture." Trendsettah alleged various antitrust and contract claims against Swisher.

A jury found in favor of Trendsettah, awarding $14,815,494 on its antitrust claim and $9,062,679 on its contract claim. The district court entered judgment in favor of Trendsettah, trebling the antitrust damages to $44,446,482.00 and reducing the contract damages to zero by stipulation. Following the verdict, the district court granted summary judgment in favor of Swisher on the antitrust claims, and entered judgment in favor of Trendsettah on the contract claims.

On appeal, we affirmed in part and reversed in part the district court's judgment. *See Trendsettah*, 761 F. App'x at 718. We held that, although the district court properly reconsidered its prior summary judgment ruling, reversal was warranted because the district court "failed to draw all reasonable inferences in favor of" Trendsettah, and "cited evidence that Swisher had introduced at trial [that] the jury clearly had rejected." *Id.* at 717 (citation omitted). We "directed [the district court] to reinstate the jury's verdict in its entirety." *Id.* at 718.

On remand, Swisher filed a motion for relief from judgment pursuant to Rule 60 on the basis that Alrahib "conspired with [Trendsettah's] importer [Havana 59] to evade millions of dollars in federal excise taxes due on [Trendsettah's] cigarillos. The criminal tax evasion scheme entailed creating fake invoices and using [Trendsettah's] bank accounts to covertly transfer funds to [Trendsettah's]

Dominican Republic manufacturer so that the Customs and Border Protection . . . could not detect the actual first sales price of [Trendsettah's] cigarillos and collect the full amount of taxes due on them."[1]

Swisher maintained that it "learned of [Trendsettah's] tax avoidance and illegal kickbacks when a grand jury indictment in Mr. Alrahib's criminal case became publicly available." Swisher also asserted that during the discovery phase of the case between Swisher and Trendsettah, Trendsettah "refused to produce its federal excise tax filings, claiming irrelevance and undue burden," and "falsely represented" that federal excise tax information was reflected "in [Trendsettah's] sales records." Swisher maintained that it was "now apparent that the financial records [Trendsettah] passed off as accurate did not account for its illegal tax avoidance."

Swisher contended that it was entitled to relief from judgment because Trendsettah's conduct constituted fraud on the court. Swisher also asserted that relief from judgment was warranted under Rule 60(b) due to newly discovered evidence and fraud.

In support of its motion, Swisher submitted the declaration of Dr. Alan Cox, who provided expert testimony on behalf of Swisher during the trial. Dr. Cox observed that

---

[1] As discussed more extensively later in the opinion, Trendsettah's fraudulent avoidance of federal excise taxes thwarted Swisher's ability to sufficiently defend against Trendsettah's antitrust claim premised on its inability to compete in the face of Swisher's purported anticompetitive conduct. According to Swisher, this deception "left [Trendsettah] free to present to the jury and the [district court] a falsely inflated picture of the profitability of its cigarillo sales out of which its expert constructed a largely, if not entirely, sham claim for lost profits."

Alrahib's fraud scheme "overlapped with most of the current injury and damages period claimed by [Trendsettah]" at trial. The fraud scheme affected the damages presentation by artificially inflating profits through fraudulent evasion of excise taxes. Dr. Cox opined that "[i]f one account[ed] for the excise taxes [Trendsettah] should have paid, [the damages] model—which the jury accepted in rendering its award—would have estimated no damages." "In addition, [Trendsettah's] tax evasion allowed [Trendsettah] to sell product at a price that was artificially low." Dr. Cox concluded that "had [Trendsettah] paid its excise taxes, it would have gone out of business by early 2014. Selling for three years at a loss was possible because [Trendsettah] had, in effect, taken an unlawful and unsanctioned subsidy from the government through its excise tax fraud scheme." "Absent such fraud, [Trendsettah] would have had to increase prices (and sell fewer products) or shut down. Its demonstrated inability to compete effectively in the relevant markets also indicate[d] that Swisher's alleged actions could not have harmed competition as [Trendsettah] alleged."

The district court granted Swisher's motion for relief from judgment under Rule 60. The district court reasoned that, prior to trial, Swisher sought discovery of Trendsettah's payment of federal excise taxes, but Trendsettah objected to the requested discovery on the grounds of undue burden and irrelevance. Trendsettah also informed Swisher that the information was available in Trendsettah's "financial records, sales orders, and invoices." Trendsettah's "general counsel subsequently testified that [Trendsettah] . . . produced all documents responsive to Swisher's discovery requests."

The district court noted that, of course, Trendsettah never disclosed Alrahib's involvement in the scheme to evade

federal excise taxes. The district court emphasized that Trendsettah did not "disclose documents which demonstrated what Alrahib admits were falsified invoices." The district court determined that "the documents produced did not reflect the true cost of manufacturing and importing [Trendsettah's] cigarillos, even though they were presented to Swisher as an accurate reflection of [Trendsettah's] costs and profits."

The district court determined the "misleading financial records" were used by Trendsettah's damages expert, Dr. Deforest McDuff. The damages calculations were predicated on the 2013–14 profit margins that "were artificially inflated by the underpayment of federal excise taxes, infecting Dr. McDuff's entire analysis."

The district court concluded that Trendsettah "presented to the jury and to the Court a theory of lost profits premised on inaccurate data which was a product of a fraudulent tax evasion scheme," and that Trendsettah's "conduct tainted the integrity of the trial and interfered with the judicial process."

The district court was unpersuaded by Trendsettah's contention that Swisher failed to exercise reasonable diligence in discovering the fraud. The district court recalled that Trendsettah "successfully moved *in limine* to exclude any evidence or argument regarding Alrahib's past tax-related enforcement actions, in part based on the argument that Alrahib's tax evasion was merely past conduct that had no relevance to this trial."

The district court concluded that Swisher exercised reasonable diligence under Rule 60(d)(3) because Swisher "was entitled to accept [Trendsettah's] answers to its discovery requests as accurate and not to seek additional

discovery relating to the issue." The district court concluded that Trendsettah "cannot blame Swisher for the success of its obstructionist conduct."

The district court ultimately held that Swisher demonstrated "by clear and convincing evidence that [Trendsettah] engaged in misconduct that undermined the judicial process," resulting in fraud on the court.

The district court also granted relief from the judgment under Rules 60(b)(2) and (b)(3) due to newly discovered evidence and fraud. The district court determined that Swisher's motion was timely because "the evidence demonstrating fraud—Alrahib's May 2017 interview which was revealed to the public in April 2019—was not available" when Swisher was able to move for a new trial. Additionally, the district court reasoned that "the Ninth Circuit's [remand] decision substantially altered the judgment," and the time for filing a motion for relief from judgment was "restart[ed]."

After the district court denied Trendsettah's motion for reconsideration, Trendsettah filed a Rule 60(b) motion for relief from the district court's order granting Swisher's Rule 60 motion, which the district court also denied.

Trendsettah subsequently filed a motion for certification of the district court's November 12, 2019 order to allow an interlocutory appeal, which the district court denied. Trendsettah also filed a petition for mandamus with this court, which was denied.

Finally, Trendsettah filed a motion to voluntarily dismiss its claims with prejudice to take an immediate appeal of the district court's orders. The district court granted

Trendsettah's motion to dismiss with prejudice, and Trendsettah filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

"We review questions of our own jurisdiction *de novo*." *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930, 934 (9th Cir. 2021) (citation omitted).

We review the district court's rulings on Swisher's Rule 60 motion for an abuse of discretion. *See Irvine Unified Sch. Dist. v. K.G.*, 853 F.3d 1087, 1090 (9th Cir. 2017).

## III.    DISCUSSION

### A.  Jurisdiction

Relying on *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), Swisher contends that we lack jurisdiction over Trendsettah's appeal because there is no final judgment. But Swisher's jurisdictional challenge is unavailing. In *Microsoft*, the Supreme Court considered whether jurisdiction exists under 28 U.S.C. § 1291 and Article III of the United States Constitution over "an order denying class certification . . . after the named plaintiffs have voluntarily dismissed their claims with prejudice." 137 S. Ct. at 1712. The Supreme Court held that, in the class action context, plaintiffs may not "transform a tentative interlocutory order [denying class certification] into a final judgment" by simply dismissing those claims with prejudice while maintaining "the right to revive those claims if the denial of class certification is reversed on appeal." *Id.* at 1715 (citations and internal quotation marks omitted).

Over twenty years ago, we held in a case not involving a class action that a plaintiff may voluntarily dismiss claims with prejudice "to secure[ ] review of an order that would not ordinarily be reviewable until after a trial on the merits." *Concha v. London*, 62 F.3d 1493, 1508–09 (9th Cir. 1995). We emphasized that unlike the situation in *Microsoft*, the dismissal of his action with prejudice in this non-class action context "runs a serious risk of losing [the] claim entirely." *Id.* at 1508. If the plaintiff loses on appeal, "the dismissal with prejudice stands" and any future action for that claim is forever forfeited. *Id.* We concluded in the non-class action context, that permitting appeal following an unqualified dismissal with prejudice "is not likely to undermine our normal appellate practice." *Id.*

We have since clarified that the rule articulated in *Concha* was not impacted by *Microsoft*, which "involved an attempt to use the voluntary dismissal mechanism to obtain an appeal as of right in order to review an earlier denial of class certification." *Rodriguez v. Taco Bell Corp*., 896 F.3d 952, 955 (9th Cir. 2018). In *Rodriguez*, we meticulously explained that the plaintiffs in *Microsoft* attempted to thwart the "careful[ly] calibra[ted]" class certification provisions of Rule 23 of the Federal Rules of Civil Procedure. *Id.* at 955. Specifically, in *Microsoft*, the Supreme Court "held the denial of class certification was not reviewable because plaintiffs had already been denied a discretionary appeal pursuant to [Federal Rule of Civil Procedure] 23(f)." *Id.* (citing *Microsoft*, 137 S. Ct. at 1714–15). We noted that *Rodriguez* did not "involve an attempt to obtain review of a class certification issue." *Id.* Rather, *Rodriguez* involved "review of a partial summary judgment order." *Id.*

In *Rodriguez*, *see id.*, we cited with approval our post-*Microsoft* decision in *Brown v. Cinemark USA, Inc.*, 876 F.3d 1199 (9th Cir. 2017) that distinguished *Microsoft* on the same basis—that allowing interlocutory appeal of the denial of class certification would "subvert the balanced solution Rule 23(f) put in place for immediate review of class action orders." *Brown*, 876 F.3d at 1201.

In *Rodriguez*, we distilled our holding in *Brown* to this: "a voluntary dismissal of remaining claims can render the earlier interlocutory order appealable, so long as the discretionary regime of Rule 23(f) is not undermined." *Rodriguez*, 896 F.3d at 955 (citation omitted).  We ultimately concluded that our pre-*Microsoft* precedent (*Concha*) and post-*Microsoft* precedent (*Brown*) controlled, rendering the voluntary dismissal with prejudice in *Rodriguez* "a valid final judgment for purposes of 28 U.S.C. § 1291." *Id.* at 956.

We are not persuaded that *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115 (9th Cir. 2020) compels a contrary conclusion.  In that case, we held that voluntary dismissal of claims with prejudice did not provide appellate jurisdiction because the Federal Arbitration Act [FAA] "endeavors to promote appeals from orders barring arbitration and limit[s] appeals from orders directing arbitration." *Id.* at 1118 (citation omitted).  We recognized that the FAA accomplishes this goal "by explicitly prohibiting the appeal of orders compelling arbitration." *Id.* (citation omitted); *see also Sperring v. LLR, Inc.*, 995 F.3d 680, 682 (9th Cir. 2021) (dismissing an appeal because "Appellants, like Langere, voluntarily dismissed their action with prejudice in an attempt to obtain an appealable final judgment *following an order compelling arbitration*") (emphasis added). Trendsettah's appeal does not implicate any similar statutory restrictions

that would be adversely affected by permitting voluntary dismissal of claims with prejudice.[2]

The district court considered and acknowledged that Trendsettah sought to dismiss its claims with prejudice in order to appeal the court's rulings on Swisher's Rule 60 motion. But unlike the plaintiffs in *Microsoft* and *Langere*, Trendsettah is not attempting to take an appeal midstream, such that success on appeal would allow it to continue litigating its claims in a preferred posture or forum. Trendsettah's claims have already been litigated and a final decision on those claims has been reached. Thus, however we decide this appeal, the case will be over—either the jury's prior verdict will be reinstated or the district court's dismissal of Trendsettah's claims with prejudice will stand. Moreover, "[a] district court's involvement in the voluntary dismissal of a plaintiff's claims carries substantial weight in determining whether appellate jurisdiction is proper. . . ." *Galaza v. Wolf*, 954 F.3d 1267, 1272 (9th Cir. 2020). In sum, under applicable precedent, Trendsettah's voluntary dismissal of its claims with prejudice did not deprive this court of jurisdiction. *See Concha*, 62 F.3d at 1507–08; *see also Brown*, 876 F.3d at 1201.

---

[2] Swisher's reliance on *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125 (9th Cir. 2022) is misplaced. In *ICTSI Oregon, Inc.*, we addressed certification requirements for an interlocutory appeal under 28 U.S.C. § 1292(b), and did not consider the voluntary dismissal of claims with prejudice. *See id.* at 1129.

## B.  The District Court's Grant of Swisher's Rule 60 Motion Based On Fraud On The Court

Trendsettah contends that the district court failed to properly apply the requisite factors in determining whether Trendsettah engaged in fraud on the court.

Initially, it bears emphasizing that a party seeking to establish fraud on the court must meet a high standard.  *See Latshaw v. Trainer Wortham & Co., Inc*., 452 F.3d 1097, 1104 (9th Cir. 2006).  "We exercise the power to vacate judgments for fraud on the court with restraint and discretion, and only when the fraud is established by clear and convincing evidence."  *United States v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011) (citations and internal quotation marks omitted).

Our precedent "emphasize[s] that not all fraud is fraud on the court."  *United States v. Sierra Pacific Indus., Inc.*, 862 F.3d 1157, 1167 (9th Cir. 2017) (citation and internal quotation marks omitted).  "In determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct prejudiced the opposing party, but whether it harmed the integrity of the judicial process."  *Id.* at 1167–68 (citations and internal quotation marks omitted); *see also Levander v. Prober* (*In re Levander*), 180 F.3d 1114, 1119 (9th Cir. 1999), *as amended* (explaining that "[f]raud upon the court should . . . embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.") (citation and internal quotation marks omitted).

Additionally, "mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and perjury by a party or witness, by itself, is not normally fraud on the court." *Sierra Pacific Indus., Inc.*, 862 F.3d at 1168 (citation, alteration, and internal quotation marks omitted). "However, perjury may constitute fraud on the court if it involves, or is suborned by, an officer of the court. . . ." *Id.* (citations and internal quotation marks omitted). "Under the high standard for a Rule 60(d)(3) motion, a mere discovery violation or non-disclosure does not rise to the level of fraud on the court. . . ." *Id.* at 1171 (citation omitted). "[O]ur case law requires that a party show willful deception rather than simply reckless disregard for the truth . . ." *Id.* at 1172 (citation omitted).

Despite the exacting standard applicable to the determination of fraud on the court, the district court did not extensively address whether the purported fraud on the court involved an "*intentional*, material misrepresentation" in support of "an unconscionable plan or scheme which [was] designed to improperly influence the court in its decision." *Id.* at 1168 (citations omitted) (emphasis added). The district court briefly mentioned the requirement for an intentional misrepresentation, but characterized the trial testimony and evidence as "false" and "misleading," rather than an intentional misrepresentation. However, "mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and perjury by a party or witness, by itself, is not normally fraud on the court." *Id.* at 1168 (citation, alteration, and internal quotation marks omitted). Notably, neither the district court nor Swisher identified any specific statements or testimony during the trial that amounted to perjury.

Moreover, "[a] fraud connected with the presentation of a case to a court is not necessarily a fraud on the court." *Estate of Stonehill*, 660 F.3d at 444 (citation and internal quotation marks omitted). Instead, we have recognized that "[m]ost fraud on the court cases involve a scheme by one party to hide a key fact from the court and the opposing party." *Id.* Such a scheme was found in *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1130 (9th Cir. 1995), a wrongful death case resulting from a gun being dropped and misfiring while the safety was on. During trial, the defendant introduced a video demonstrating that "the safeties performed as designed, and the gun never fired." *Id.* at 1130. However, discovery in a different lawsuit revealed the existence of an earlier video, prepared at the same time as the trial video, "showing that the [gun] fired when dropped during testing." *Id.* This earlier video was never provided to Pumphrey. *See id.*

We concluded that introduction of the video depicting the safeties performing as designed constituted fraud on the court because the video shown at trial was made when "the original video did not turn out as planned." *Id.* at 1131. We reasoned that defendant Thompson Tools, through in-house counsel "undermined the judicial process" through failure to disclose the earlier video, affirmatively mischaracterizing the test results, and letting stand uncorrected "the false impression created by" the witness who performed the tests. *Id.* at 1133. Importantly, the defendant previously "answered a request for production by stating that defendant [was] not presently aware of any records relating to the testing of the . . . handguns," and "[i]f records [were] later discovered, they [would] be made available pursuant to this request." *Id.* at 1131. But the earlier video was "never disclosed." *Id.*

Similarly, *In re Levander* involved fraud on the court because the bankruptcy court granted attorneys' fees against a corporation without "know[ing] of the existence of" a partnership to which the corporation had transferred its assets. 180 F.3d at 1117. "The reason the court so believed was that when one of the Corporation's officers was asked during a . . . deposition whether the Corporation's assets had been sold, he answered:  No. The assets haven't been sold." *Id.* (internal quotation marks omitted).  However, it was later revealed that "a former employee of the Corporation . . . owned what had been the Corporation's assets in the bank." *Id.*  The bill of sale revealed that the Partnership had transferred ownership of all corporate assets "for one dollar." *Id.*  We determined that fraud on the court occurred because "*the court relied on* the Corporation's depositions to impose attorneys' fees on the Corporation, rather than on the party with the assets—the Partnership." *Id.* at 1120 (citations omitted) (emphasis added).

In contrast to the facts in *Pumphrey* and *Levander*, no clear and convincing evidence was presented that either Trendsettah or its attorneys was responsible for "an intentional, material misrepresentation directly aimed at the court." *In re Napster, Inc. Copyright Litig*., 479 F.3d 1078, 1097 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009) (citation and internal quotation marks omitted).  Although the district court observed that Trendsettah's attorneys objected to Swisher's discovery requests for federal excise taxes as "burdensome" and "irrelevant," there was not clear and convincing evidence that Trendsettah's counsel had knowledge of or intended to conceal Alrahib's fraudulent tax

evasion.[3]     While the district court concluded that Trendsettah's financial records were "misleading" because they did not reveal Alrahib's conduct, it is not clearly evident that Trendsettah's discovery responses were "directly aimed at the court." *In re Napster*, 479 F.3d at 1097 (citation and internal quotation marks omitted).  As the Tenth Circuit illuminated,

> Fraud on the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.  It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. . . .

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court.  Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

---

[3] Although a party may commit fraud on the court, *see In re Levander*, 180 F.3d at 1120, our cases often involve misconduct by an attorney.  *See, e.g.*, *Pumphrey*, 62 F.3d at 1133.  In this case, the district court determined that "counsel acted in good faith and was not a party to the other activities of the Trendsettah principal."

*United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (citations and alterations omitted).

Our review of relevant case authority persuades us that the district court erred in granting relief from judgment under Rule 60(d) based on fraud on the court. *See Sierra Pacific Indus., Inc.*, 862 F.3d at 1171–72.

### C. The District Court's Grant of Swisher's Motion for Relief from Judgment Due To Newly Discovered Evidence and Fraud

Trendsettah asserts that the district court abused its discretion in granting Swisher's motion for relief from judgment as to Trendsettah's antitrust claims pursuant to Rules 60(b)(2) and (b)(3) based on fraud and newly discovered evidence. Trendsettah posits that Swisher's motion was untimely under the one-year limitation period imposed by Rule 60(c)(1), and that no equitable exceptions applied to toll the limitations period.

In *Nevitt v. United States*, 886 F.2d 1187 (9th Cir. 1989), a case relied on by Trendsettah, we explained that "[a] motion for relief from judgment based on a mistake (Rule 60(b)(1)), newly discovered evidence (Rule 60(b)(2)), or fraud (Rule 60(b)(3)) shall be made not more than one year after the judgment, order, or proceeding was entered or taken." *Id.* at 1188 (citation and internal quotation marks omitted). The "one-year limitation period is not tolled during an appeal." *Id.* (citation omitted).

The present appeal is distinguishable from *Nevitt* because Swisher did not seek to toll the time limitations imposed by Rule 60(c)(1) while its appeal was pending. Rather, the

district court determined that Swisher's motion was timely because "the Ninth Circuit's decision substantially altered the judgment, and the time for bringing a Rule 60(b) motion restart[ed]."

Although we have not extensively addressed this issue, other courts have concluded that the limitations period imposed by Rule 60(c)(1) may be restarted subsequent to an appeal. For example, in *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008), the Eighth Circuit explained that courts "have recognized that a new, one-year period under Rule 60(b) might be triggered if a subsequent appellate ruling substantially alters the district court's judgment in a manner that disturbs or revises the previous, plainly settled legal rights and obligations of the parties." (citations and alteration omitted); *see also Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 466 F.3d 97, 100–01 (2d Cir. 2006), *as amended* (concluding that the one-year limitations period for a Rule 60(b) motion was not restarted because its prior "ruling made no substantive change in [the] legal position from that established by the judgment of the district court") (citation omitted); *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1089 (10th Cir. 2005) (acknowledging that a new "one-year period under Rule 60(b) might be triggered if the subsequent appellate ruling substantially alters the district court's judgment") (citations omitted).

The reasoning of these cases informs our agreement with the district court that Swisher's motion under Rule 60(b)(2) and (b)(3) was timely because our remand decision "substantially alter[ed] the district court's judgment in a manner that disturb[ed] or revise[d] the previous, plainly settled legal rights and obligations of the parties." *Jones*,

512 F.3d at 1048 (citations omitted).  The jury rendered a verdict in favor of Trendsettah on its antitrust and breach of contract claims.  On Swisher's motion for judgment as a matter of law, the district court entered judgment in favor of Trendsettah on the breach of contract claims, but entered judgment "in favor of [Swisher] and against [Trendsettah] on all of [Trendsettah's] other claims, including [Trendsettah's] claims for violation of Section 2 of the Sherman Act."  On appeal, we ruled that in pertinent part:

> The district court's grant of summary judgment to Swisher as to its antitrust claims is REVERSED. The district court's grant of a new trial to Swisher as to the attempted monopolization claim is REVERSED. . . . The district court's grant of [judgment as a matter of law] to Swisher as to the monopolization claim is REVERSED. . . . On remand, the district court is directed to reinstate the jury's verdict in its entirety. . . .

*Trendsettah USA, Inc.*, 761 F. App'x at 718.  Our remand decision "substantially alter[ed]" the district court's judgment in favor of Swisher regarding the antitrust claims, rendering Swisher's Rule 60 motions timely as to those claims. *Jones*, 512 F.3d at 1048 (citations omitted).

Contrary to Trendsettah's assertions, construing Swisher's motion as timely does not contravene Rule 60(c)(1) or Rule 6(b)(2) of the Federal Rules of Civil Procedure.  Rule 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for [Rule 60(b)] (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

The rule that we apply in conformity with our sister circuits is consistent with Rule 60(c)(1) because it is tethered to the judgment itself, and substantial alterations in the judgment from an appellate ruling.  This rule is also consistent with Rule 6 of the Federal Rules of Civil Procedure, which prohibits a court from "extend[ing] the time to act under" Rule 60(b). Fed. R. Civ. P. 6(b)(2).  We are not extending the time for filing a Rule 60(b) motion, but recognizing the beginning of a new limitations period as a result of an appellate decision that has "substantially alter[ed] the district court's judgment in a manner that disturbs or revises the previous, plainly settled legal rights and obligations of the parties." *Jones*, 512 F.3d at 1048.

Addressing the merits of Swisher's motion, Trendsettah contends that the district court erred in granting Swisher's Rule 60(b) motion because issues relating to federal excise taxes were irrelevant at trial, and Swisher did not exercise reasonable diligence in discovering Alrahib's fraud.  We disagree.

"Rule 60(b) allows for relief from a final judgment, order, or proceeding for any of six reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason that justifies relief." *Hanson v. Shubert*, 968 F.3d 1014, 1017 n.1 (9th Cir. 2020) (citation and internal quotation marks omitted).

"Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes newly discovered

evidence within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (citation and internal quotation marks omitted).

"Rule 60(b)(3) permits a losing party to move for relief from judgment on the basis of fraud, misrepresentation, or other misconduct of an adverse party." *De Saracho v. Custom Food Mach., Inc*., 206 F.3d 874, 880 (9th Cir. 2000) (citation, alteration, and internal quotation marks omitted). "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Id.* (citations omitted). "Rule 60(b)(3) is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. . . ." *Id.* (citation and internal quotation marks omitted).

Trendsettah contends that Swisher failed to meet the standard for relief from judgment premised on fraud and newly discovered evidence due to "the facial irrelevance of excise taxes" to the damages calculations performed by Trendsettah's expert.  As previously noted, however, Trendsettah's tax evasion allowed it to set artificially low prices and continue to compete effectively in the relevant markets, thereby incurring its asserted damages.

Moreover, Alrahib stated in his interview with an internal revenue agent that he was aware of the tax evasion and "that's how we could compete in the marketplace."  Alrahib

explained that "there's no way [they] could compete" without the benefits bestowed by the fraudulent evasion of federal excise taxes. Trendsettah does not dispute that, in support of Trendsettah's antitrust claim, Alrahib testified about the impact of Swisher's purported anticompetitive behavior on Trendsettah's business. Alrahib's concealment of his excise tax fraud scheme and its impact on Trendsettah's competitive viability precluded Swisher's defense to the antitrust claims "from being fully and fairly presented." *Wharf v. Burlington N. R.R. Co.*, 60 F.3d 631, 638 (9th Cir. 1995). Tellingly, Trendsettah does not advance any contention that the jury would have reached the same verdict for antitrust liability and damages if it were fully apprised of Alrahib's fraudulent evasion of federal excise taxes.

We are also unpersuaded by Trendsettah's contentions that Swisher did not exercise reasonable diligence in discovering the fraud. First, Trendsettah maintains that Swisher belatedly realized the import of federal excise taxes relative to the damages calculation for the antitrust claims. However, Trendsettah's reliance on this hypertechnical aspect of damages calculations, which it describes as "a methodological criticism that was available all along," misses the point. Trendsettah's fraud implicated more than "a methodological criticism." Instead, it undermined Trendsettah's allegations that its business was constrained by Swisher's anticompetitive acts. Dr. Cox explained that "[a]bsent such fraud, [Trendsettah] would have had to increase prices (and sell fewer products) or shut down. Its demonstrated inability to compete effectively in the relevant markets [absent the tax fraud] also indicates that Swisher's alleged actions could not have harmed competition as [Trendsettah] alleged."

Second, Trendsettah maintains that Swisher had in its possession invoices "showing that [Trendsettah] paid Havana 59 nearly $40,000 per container in excise tax," "hundreds of copies of the tax filings themselves," "along with the details of the calculations and the canceled checks showing those payments." According to Trendsettah, Swisher was compelled to wade through these documents and piece together the fraudulent tax evasion scheme concealed by Alrahib. But Swisher was not required to engage in a fishing expedition to establish reasonable diligence. Indeed, it bears noting that Trendsettah's own expert did not detect the fraud that Trendsettah posits was hidden in plain sight.

Finally, Trendsettah asserts that the district court "adopted Swisher's factual premise that any line of questioning about excise-tax evasion would likely have led to the disclosure of the fraudulent scheme." Trendsettah apparently maintains that the district court made a factual finding that Swisher could have discovered Alrahib's tax fraud scheme if only it had asked questions about excise taxes at trial. But this notion is *not* supported by the district court's order. The district court explained that:

> based on [Trendsettah's] inaccurate arguments that Alrahib's federal excise tax violations were merely past wrongs, Swisher was foreclosed from asking Alrahib about excise tax evasion, a line of questioning that, absent perjury, would likely have led to the disclosure of the fraudulent scheme he later disclosed to federal . . . agents.

In context, the district court's observation was related to Alrahib's deposition testimony and Trendsettah's motion *in*

*limine*. In his deposition, Alrahib acknowledged that he failed to pay state excise taxes for a business in Arizona. However, Swisher was unable to pursue this issue at trial because the district court granted Trendsettah's motion *in limine* "to exclude evidence that Trendsettah's principal Akrum Alrahib . . . failed to pay excise taxes on tobacco products purchased through an Arizona company and later resold in California." Far from making a factual determination that "any line of questioning about excise-tax evasion" would have revealed Alrahib's fraud, the district court concluded that Swisher's failure to further question Alrahib concerning tax fraud was due to the grant of Trendsettah's motion *in limine* rather than a lack of diligence by Swisher. As a result, the district court correctly concluded that "the evidence demonstrating fraud—Alrahib's May 2017 interview which was revealed to the public in April 2019—was not available" when Swisher could have filed a motion for new trial.

We conclude that Swisher timely filed its Rule 60(b) motion and exercised reasonable diligence in discovering Alrahib's fraudulent evasion of federal excise taxes. If Swisher had been able to present evidence of Alrahib's fraud to the jury, it "would have . . . likely . . . change[d] the disposition of the case," *Feature Realty, Inc.*, 331 F.3d at 1093 (citation omitted), and enabled Swisher to "fully and fairly present[ ]" its defense to the antitrust claims, *Wharf*, 60 F.3d at 638. The district court, therefore, properly vacated the judgment in accordance with Rules 60(b)(2) and (b)(3).[4]

---

[4] Because we affirm the district court's order granting Swisher's motion for relief from judgment under Rule 60(b), we decline to grant Trendsettah's request that this case be reassigned to a different district court judge.

## IV.     CONCLUSION

Swisher was unable to meet the high threshold to establish fraud on the court under Rule 60(d). *See Sierra Pacific Indus., Inc.*, 862 F.3d at 1168. However, relief from judgment on Trendsettah's antitrust claims is warranted under Rule 60(b)(2) and (b)(3) based on newly discovered evidence and fraud.

Swisher's motion brought pursuant to Rule 60(b)(2) and (b)(3) based on newly discovered evidence and fraud was timely, and Swisher acted with reasonable diligence in discovering Alrahib's tax fraud scheme, which, if disclosed, would have likely altered the jury's verdict.

**AFFIRMED in part and REVERSED in part.  Each party shall bear its costs on appeal.**