**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>AMADEUS THERAPY, INC.,<br>　　　　　　　Debtor. | BAP No. AZ-24-1049-BSC |
| NAI HORIZON,<br>　　　　　　　Appellant,<br>v.<br>AMADEUS THERAPY, INC.,<br>　　　　　　　Appellee. | Bk. No. 2:21-bk-08245-BKM<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda K. Martin, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and CORBIT, Bankruptcy Judges.

### INTRODUCTION

Appellant NAI Horizon ("NAI") appeals an order denying its motion for relief from judgment under Civil Rule 60(d)(3).[1] Previously, the bankruptcy court sustained the debtor's objection to NAI's unsecured claim for a real estate commission. NAI appealed the order disallowing its claim to the district court, which affirmed. NAI then sought relief under Civil Rule

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

60(d)(3), arguing that the debtor obtained a favorable ruling on the claim objection by committing fraud on the court. Seeing no abuse of discretion by the bankruptcy court, we AFFIRM.

FACTS[2]

## A.    Prepetition events

Bridget O'Brien is the sole shareholder of debtor Amadeus Therapy, Inc. ("Debtor"). In February 2019, Debtor executed a $500,000 promissory note secured by a deed of trust to purchase real property in Avondale, Arizona (the "Dysart Property").

In early 2020, Ms. O'Brien was diagnosed with metastatic breast cancer stage 3 with the prognosis of likely death. Ultimately, she survived.

On May 19, 2020, Debtor executed a Special Warranty Deed ("Deed") which, according to its terms, conveyed the Dysart Property to the Vickie L. Simpson Living Trust (the "Simpson Trust"). Vickie Simpson was a friend and business associate of Ms. O'Brien's.

In February 2021, Debtor hired NAI to sell the Dysart Property. The listing period was to end on September 30, 2021. Under the Listing Agreement, Debtor would pay NAI a 5% commission if "the [Dysart] Property or any interest therein is voluntarily or involuntarily sold, conveyed, exchanged, assigned, contributed or transferred[.]"

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

The Simpson Trust recorded the Deed for the Dysart Property on May 21, 2021, one year after receiving it from Debtor. On October 27, 2021, the Simpson Trust recorded a Quit Claim Deed which, according to its terms, conveyed the Dysart Property back to Debtor.

**B.    Postpetition events**

    **1.    The bankruptcy filing, trial on the claim objection, and the appeal.**

After Debtor filed a chapter 11 bankruptcy case on November 4, 2021, NAI filed an unsecured proof of claim for $110,000 (reduced to $104,000) for what it contended was an earned sales commission. NAI argued that Debtor breached the Listing Agreement by transferring the Dysart Property to the Simpson Trust on May 21, 2021 (the recording date), without notifying NAI or paying NAI the required commission. Debtor objected to the claim.

After a round of cross motions for summary judgment, the bankruptcy court held a trial on whether Ms. O'Brien had the requisite intent to effectuate a transfer of the Dysart Property to the Simpson Trust. Ms. O'Brien testified that she was concerned about who would care for her children if she passed away from cancer, so it was agreed that Ms. Simpson would care for the O'Brien children in that event. For Ms. Simpson to have the necessary financial means, Ms. O'Brien signed the Deed for the Dysart Property (and deeds for other properties), but with the condition that the Dysart Property would not transfer to the Simpson Trust unless Ms. O'Brien died. Although the Deed did not contain any conditional language, Ms. O'Brien testified that both women understood that the Deed was not to be recorded or used in any

manner unless and until she died. Debtor argued that the Simpson Trust's recording of the Deed was fraudulent and an attempted theft.

One of the trial exhibits included a "screenshot" of a letter from a Dr. Tracy Wooten, the naturopathic physician treating Ms. O'Brien, attesting to Ms. O'Brien's illness (the "Wooten Letter"). The Wooten Letter stated:

To Whom It May Concern:

Bridget O'Brien and [sic] has been under my medical care since 2015. In 2017, Ms. O'Brien was diagnosed with stage 3 metastatic breast cancer. She underwent treatment starting in January 2018 with radiation then, in April 2018 with a bilateral mastectomy, followed by multiple rounds of different types of chemotherapy, more radiation, medication and subsequent surgeries through 2020. In 2020, due to severe side effects, [s]he decided to discontinue chemotherapy and pursue a holistic treatment approach for recovery.

Sincerely,
Tracy Wooten
Dr. Tracy Wooten, MD

Other than the Wooten Letter, Debtor did not submit any medical records to corroborate Ms. O'Brien's testimony that she had been diagnosed with cancer and treated for such. Ms. O'Brien testified that she attempted to get records from Mayo Clinic in response to NAI's production request, but was unable to given the expedited discovery time frame agreed to by the parties, which began about one month before trial.

Debtor argued that other evidence corroborated Ms. O'Brien's testimony as to her lack of intent to transfer the Dysart Property, including a February 2,

4

2021 email from Ms. Simpson to a document preparer, which stated (grammatical and punctuation errors in original):

> Whitney we needed just add me to title as beneficiary in case something happened to Bridget I could handle her estate for her kids. We went by your advice as to what papers to draw up not change Everything totally in my name. You said we couldn't do that. We do need a form from you now if we can that you mentioned that you could draw up that forms were Incorrect & being redone. I would appreciate that

Debtor argued that this proved Ms. Simpson knew of Ms. O'Brien's intent not to transfer the Dysart Property.[3]

NAI argued that the transfer of the Deed was not conditional and could have been completed for many reasons, including as consideration to Ms. Simpson for her role in guarantying loans or managing other properties or businesses in which she and Ms. O'Brien had unwritten partnership or financial interests. Besides Ms. O'Brien's testimony, argued NAI, Debtor had no evidence to corroborate her alleged lack of intent. However, NAI argued that contrary evidence existed, including language in a Settlement Agreement between Ms. O'Brien and Ms. Simpson dated October 27, 2021 (the date the Quit Claim Deed was recorded), which revealed that ownership of the Dysart Property was disputed. In addition, there was a listing agreement between NAI and the Simpson Trust involving another property dated January 14, 2020, but oddly it was signed by Ms. O'Brien on behalf of the Simpson Trust.

---

[3] The bankruptcy court found that the February 2 email was less than clear and appeared to discuss adding Ms. Simpson as a beneficiary, not transferring title.

NAI further argued that Ms. O'Brien's actions were consistent with a pattern in which she anticipated putting real property interests out of reach of creditors, to hinder, delay, or frustrate their remedies as to defaulted real property loans. NAI asserted that Ms. O'Brien had a history of raising falsehoods when faced with financial hardship and that illnesses, and specifically the cancer diagnosis, were ruses to deflect creditors. NAI questioned the authenticity of the Wooten Letter, arguing that Dr. Wooten had wrongfully identified herself as a "MD" when she was actually a "NMD".[4] NAI's position was that, if Ms. O'Brien did not have cancer, then the premise for conditional delivery of the Deed was eliminated.

On February 14, 2023, the bankruptcy court sustained Debtor's objection and disallowed NAI's claim in its entirety (the "Claim Order"). The court determined that Ms. O'Brien intended the Deed to be conditional with title to the Dysart Property to transfer only upon her death. Thus, delivery was ineffective. Consequently, because Debtor did not transfer the Dysart Property during the term of the Listing Agreement, and thus no breach occurred, NAI could not claim a commission based on such breach.

The court found Ms. O'Brien's testimony about her cancer diagnosis and treatment credible, which provided an explanation as to why she intended the transfer of the Deed to be conditional. The February 2, 2021 email from Ms. Simpson to the document preparer further supported Ms. O'Brien's testimony

_____

[4] Ms. O'Brien testified that the "MD" designation was a spellcheck correction error that was overlooked by Dr. Wooten's staff, and that Dr. Wooten was a naturopathic medical doctor, not just a naturopath.

that the transfer of the Dysart Property was for the purpose of supporting the O'Brien children. The court also found it important that the Simpson Trust waited a full year to record the Deed, which suggested that recordation had not been originally contemplated.

Lastly, the court found the Wooten Letter consistent with Ms. O'Brien's testimony. Dr. Wooten's statement that Ms. O'Brien pivoted from chemotherapy to naturopathic treatment in 2020 coincided with the timing of the Deed's execution in May 2020. This timing also supported Ms. O'Brien's story that she executed the Deed to be held and only recorded in the event of her death to provide funds for the care of her minor children. The court also found credible Ms. O'Brien's explanation for the "MD" designation error. The court denied NAI's request to sanction Debtor under Civil Rule 37(c)(1), finding that Ms. O'Brien's inability to obtain her two-year-old medical records on short notice from Mayo Clinic was justified and not deliberate.

NAI appealed the Claim Order to the district court, which affirmed on February 27, 2024. The district court ruled that the bankruptcy court did not err in finding that Debtor sustained its burden in showing ineffective delivery of the Deed, or err with respect to the parties' burdens of proof. Specifically, the bankruptcy court did not err in considering the Wooten Letter as evidence of Ms. O'Brien's cancer diagnosis, or err in finding that Ms. O'Brien's testimony about her cancer and the conditional nature of the Deed was credible. Finally, the district court ruled that the bankruptcy court did not err in declining to sanction Debtor under Civil Rule 37(c)(1).

**2.    NAI's Civil Rule 60(d)(3) motion**

Three weeks after the district court affirmed the Claim Order, NAI sought relief from the Claim Order under Civil Rule 60(d)(3) in the bankruptcy court. NAI argued that Debtor committed fraud on the court by using the "false and forged" Wooten Letter and that the Claim Order should be set aside to protect the integrity of the judicial process. To prove the Wooten Letter was false and forged, NAI offered a recent declaration from Dr. Wooten dated February 27, 2024 (the "Wooten Declaration"), which stated, in part:

> I want to clarify the letter submitted to the court. Ms. O'Brien called my office on 11/23/22 asking me to write a quick letter for an unrelated case stating she was receiving naturopathic treatments from me, while she was receiving cancer treatments from other doctors and clinics. While I did treat Bridget O'Brien during the referenced time period, I did not diagnose her with stage 3 metastatic breast cancer. … During our appointments, she reported to me the types of treatments and procedures she was receiving at the Mayo Clinic and other doctors for breast cancer.
>
> Further, the letter incorrectly states that I am a MD. I am a NMD and use that designation in my practice. I never have nor would hold myself out as a MD and did not at any time authorize Ms. O'Brien or anyone else to use the MD designation for me or my practice.

NAI argued that to prove her intent when transferring the Deed to the Simpson Trust, Ms. O'Brien testified consistent with the false and forged Wooten Letter to demonstrate that her intent regarding the Deed was conditional. NAI argued that the Wooten Declaration made clear that Dr.

Wooten neither drafted nor signed the Wooten Letter, nor diagnosed Ms. O'Brien's cancer. NAI argued that, in light of the Wooten Declaration, the court needed to reassess whether it had the clear and convincing evidence to conclude that the transfer was intended to be conditional. Put simply, NAI believed that Ms. O'Brien had lied about her breast cancer and that she used the Wooten Letter to corroborate and support her false story that she intended the transfer to be conditional.

Without a hearing, the bankruptcy court entered an order denying NAI's motion, concluding that NAI failed to show fraud on the court. The court found that, contrary to NAI's assertions, the Wooten Declaration did not state that Dr. Wooten did not write the Wooten Letter, or demonstrate that anything in the Wooten Letter was false. Ms. O'Brien had testified that Dr. Wooten did not diagnose her breast cancer, and that Dr. Wooten provided naturopathic treatments in addition to the traditional treatments she received from other doctors. In the court's opinion, rather than demonstrating fraud on the court, the Wooten Declaration supported the statement in the Wooten Letter and Ms. O'Brien's testimony, that in 2020 she told Dr. Wooten that she was being treated at Mayo Clinic and other places for breast cancer.

This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158(b).

## ISSUES

1.      Is the appeal moot?

2.      Did the bankruptcy court abuse its discretion when it denied NAI's motion under Civil Rule 60(d)(3)?

## STANDARDS OF REVIEW

"We review our own jurisdiction, including questions of mootness, de novo." *Ellis v. Yu (In re Ellis),* 523 B.R. 673, 677 (9th Cir. BAP 2014) (citing *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs),* 339 F.3d 782, 787 (9th Cir. 2003)).

We review denials of motions for relief under Civil Rule 60 for an abuse of discretion. *See United States v. Est. of Stonehill,* 660 F.3d 415, 443 (9th Cir. 2011). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or not supported by the record. *United States v. Hinkson,* 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.      Debtor has not shown that the appeal is moot.

Debtor has moved to dismiss the appeal as moot. "The party moving for dismissal on mootness grounds bears a heavy burden." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),* 677 F.3d, 869, 880 (9th Cir. 2012) (citation omitted). It is not clear if Debtor is asserting constitutional or equitable mootness, and the cases Debtor cites involve sale or plan

10

confirmation orders, which are not at issue here. In any case, Debtor has not met its burden.

An appeal is "constitutionally" moot when it is "impossible for the court to grant any effectual relief whatever to a prevailing party[.]" *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1000 (9th Cir. 2004). One example of a situation where we cannot grant effective relief is when funds have been disbursed to persons who are not parties to the appeal. *Credit All. Corp. v. Dunning-Ray Ins. Agency, Inc. (In re Blumer)*, 66 B.R. 109, 113 (9th Cir. BAP 1986), *aff'd sub nom.*, 826 F.2d 1069 (9th Cir. 1987). An appeal may be "equitably" moot when a comprehensive change of circumstances has occurred that would render it inequitable for the appellate court to consider the merits of the appeal. *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014).

Debtor argues that the appeal is moot because NAI failed to obtain a stay, all estate funds have been distributed, and the bankruptcy case has been closed, without objection from NAI. Debtor fails to explain why a stay was necessary here, and cites no authority for the proposition that the appeal has become moot because the bankruptcy case has been administratively closed. Indeed, the closing of the case alone has not mooted this appeal. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("An order administratively closing a case is a docket management tool that has no jurisdictional effect."). Further, Debtor agreed in its motion to close the case that NAI could move to reopen it if this appeal was successful, so its argument that NAI failed to object to the closing is not well-taken.

Moreover, although Debtor claims that all estate funds have been distributed, it is not clear that no funds could be recovered. According to the joint pretrial statement, Debtor's attorney was holding $104,000 in his trust account for the possible payment of NAI's claim. If Debtor's objection to NAI's claim was sustained, the funds were to be disbursed to Debtor. Debtor is a party to this appeal. Thus, perhaps some funds can be recovered from Debtor. Additionally, in at least three orders authorizing payments of the earmarked funds to certain creditors, including Debtor's counsel, NAI reserved its right to seek disgorgement of overpayments from these creditors.

For these reasons, Debtor has not convinced us that the appeal is moot. Accordingly, we now turn to the merits.

**B.   The bankruptcy court did not abuse its discretion when it denied NAI's motion under Civil Rule 60(d)(3).**

**1.   Governing law for relief from judgment under Civil Rule 60(d)(3)**

Civil Rule 60(d)(3), incorporated by Rule 9024, allows a court to "set aside a judgment for fraud on the court." The movant must establish fraud on the court by clear and convincing evidence. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1181 (9th Cir. 2015) (citing *Stonehill*, 660 F.3d at 443).

Not all "fraud 'connected with the presentation of a case to a court' is … necessarily a fraud on the court." *Stonehill*, 660 F.3d at 444 (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2870 (2d ed. 1987)). Rather, fraud on the court "embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the

12

court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (cleaned up) (applying Civil Rule 60(b)). "[T]he relevant inquiry is not whether fraudulent conduct prejudiced the opposing party, but whether it harmed the integrity of the judicial process." *Stonehill,* 660 F.3d at 444 (cleaned up).

The type of fraud asserted here must involve egregious conduct, such as an "unconscionable plan or scheme designed to improperly influence the court in its decision." *Latshaw,* 452 F.3d at 1104 (citations omitted). "Mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and 'perjury by a party or witness, by itself, is not normally fraud on the court.'" *Stonehill,* 660 F.3d at 444 (quoting *Levander v. Prober (In re Levander),* 180 F.3d 1114, 1119 (9th Cir. 1999)). As the Ninth Circuit Court of Appeals recently stated:

> Fraud on the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court....

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1134 (9th Cir. 2022)

(quoting *United States v. Buck,* 281 F.3d 1336, 1342 (10th Cir. 2002)).

### 2. Analysis

NAI spends much time arguing the merits of the Claim Order, challenging the bankruptcy court's findings and evidentiary rulings.[5] However, those matters are not properly before us. An appeal from an order denying a Civil Rule 60 motion, when filed more than 14 days after the underlying order or judgment, brings up for review only the denial of the motion; it does not bring up for review the underlying judgment or order. *See Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir. 1995) (applying the former 10-day rule). Further, NAI already challenged the merits of the Claim Order in its appeal to the district court, which affirmed, and that decision is final.

The only issue relevant here is whether the bankruptcy court abused its discretion in denying NAI relief under Civil Rule 60(d)(3). NAI is not clear about how the court abused its discretion. It does not appear to contest the court's application of the law with respect to Civil Rule 60(d)(3), so our review is limited to the court's findings of fact for clear error.

NAI argues that Ms. O'Brien testified consistent with the misleading Wooten Letter to prove her intent that the Deed was conditional. NAI argues that this testimony and evidence have been called into question by the Wooten Declaration, which NAI argues made clear that Dr. Wooten neither

---

[5] Debtor argues that we are unable to review the merits of this appeal because NAI failed to submit a trial transcript. While NAI did fail to file a proper excerpt of the record in violation of Rule 8009(a)(4), the bankruptcy court did not hold a hearing on the Civil Rule 60(d)(3) motion and made its ruling in a written decision. Thus, NAI was not required to provide a transcript.

drafted nor signed the Wooten Letter and did not diagnose Ms. O'Brien's cancer. NAI argues that, at best, the Wooten Letter was misleading, or at worst, furthered perjury. This, argues NAI, coupled with Debtor's nondisclosure of Ms. O'Brien's medical records, constituted fraud on the court.

The bankruptcy court concluded that NAI had not presented sufficient evidence to support its claim for fraud on the court. The court found that the Wooten Declaration did not demonstrate the requisite fraud for relief from the Claim Order. Precisely, the Wooten Declaration did not establish that the Wooten Letter had been forged or that anything in the Wooten Letter was false, much less rose to the level of "fraud on the court" for purposes of Civil Rule 60(d)(3). In fact, the court found that the Wooten Declaration was consistent with the Wooten Letter and actually supported Ms. O'Brien's testimony that she received treatment for breast cancer in 2020 at Mayo Clinic, and that Dr. Wooten was not the doctor who diagnosed her cancer. The court also noted that NAI could have deposed Dr. Wooten or requested clarification from her prior to trial, given that it was clearly suspicious of the Wooten Letter, but it did not do so. We perceive no clear error in the court's findings.

We also note that much of NAI's motion was a rehash of earlier arguments rejected by the bankruptcy court (and later the district court) and NAI's disagreement with the ruling in the Claim Order. NAI inexplicably waited over a year to get the Wooten Declaration from Dr. Wooten, despite its suspicions about the Wooten Letter's authenticity before trial. We presume

that NAI was waiting to see how its appeal turned out, and when things did not go as hoped, it then pursued another avenue of relief.

On this record, we conclude that the bankruptcy court did not abuse its discretion in denying NAI relief under Civil Rule 60(d)(3).

## CONCLUSION

For the reasons stated above, we AFFIRM. We deny Debtor's request for attorney fees on appeal without prejudice to Debtor's filing of a proper motion for attorney fees.